UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────

ANTHONY MEDINA,

                Plaintiff,

  - against -

LUCY BUTHER, et al.

                Defendants.

15 Civ. 1955 (LAP)

**DECLARATION OF CARL J. PIERCE**

CARL J. PIERCE, pursuant to 28 U.S.C. Section 1746, declare under penalty of perjury:

1. I am currently employed by the New York State Department of Corrections and Community Supervision ("DOCCS") and I hold the position of Colonel and I am the Director of the DOCCS' Correction Emergency Response Team Operations ("CERT").

2. I have been continually employed by DOCCS since 1985. During this time, I have served as a Correction Officer, a Correction Sergeant, and a Correction Lieutenant. As Colonel, I hold the highest-ranking uniformed security title in DOCCS. As the Director of CERT, I am responsible for the oversight of all uniformed staff appearance issues, policies related to search and frisk of inmates, DOCCS's Unusual Incident Reporting System, and all DOCCS Correctional Emergency Response personnel and resources.

3. I make this declaration in support of Defendants' motion for a protective order, compelling Plaintiff to adhere to the designation of: (a) "Highly Confidentiality" as to photographs of the interior of DOCCS' correctional facilities that contain DOCCS employees or inmates other than Plaintiff; and (b) "Confidential" as to photographs of the interior of DOCCS' correctional facilities.

4. Plaintiff is now, and has throughout the period covered by this contempt proceeding, been housed in a maximum-security correctional facility. While all of DOCCS' facilities

maintain security safeguards to prevent the threat of inmate escape and protect the safety of DOCCS' staff and inmates, maximum-security facilities must maintain heightened safeguards since they house some of the most dangerous inmates in the DOCCS system. Many of the inmates housed in these facilities have been incarcerated for many years and know how to manipulate information for their own purpose. DOCCS must constantly insure that access to, and use of highly sensitive material, such as photographs of the interior of those facilities, are heavily restricted.

5. Photographs of the interior or exterior of a prison present serious security concerns and their unchecked dissemination can place lives at risk. Photographs of interiors of cells, including cell doors and windows, could, intentionally or unintentionally, capture information about security features, including without limitation: the layout and/or dimensions of the cell and surrounding area; locking mechanism of the cell gates; cell door opening mechanisms; the manner in which the cells shut; and the manner in which the cells are locked and secured. These photographs present a very real threat of escape in the hands of an inmate or an accomplice on the outside. For example, if an inmate, or inmate's outside accomplice, obtained a sufficiently detailed photograph of a key or a locking mechanism, it is possible that the person could construct a counterfeit key based on that information. Inmates possessing such photographs can use them as a form of currency, trading the photographs for other items or services. Additionally, it is important that unrelated inmates are not captured in photographs, both for security purposes and to protect inmate privacy.

6. Photographs of windows within an inmate's cell, or in the surrounding area, raise their own security concerns. Even assuming that an inmate is aware of a particular window in or around his cell, providing him a photograph of the window enables the inmate to distribute the photograph to other inmates, or persons outside the facility, which could potentially then be used in preparing an escape attempt, or in noting security staff's ability or inability to observe a portion of a particular cell.

Moreover, a photograph of the window or other areas in the cell would allow an individual to identify the hardware (screws, nuts and bolts) that are used to secure the screens and other cell fixtures located within the cell which possess an imminent threat to the safety and security of the facility.

7.  Photographing the interior or exterior of a correctional facility is not a regular occurrence, nor is it routine for an inmate or his counsel to obtain access to such photographs. I am informed that photographs of the inside of Plaintiff's cell were taken because of an issue in this proceeding regarding Plaintiff's exposure to sunlight. I am further informed that DOCCS insisted on the execution of a confidentiality agreement, in which Plaintiff's counsel has agreed to maintain photographs of the interior or exterior of DOCCS' correctional facilities as "Highly Confidential," i.e., "attorneys-eyes only," to the extent photographs contained images of DOCCS staff or inmates, and to maintain as "Confidential" comparable photographs that do not contain such images. I am also informed that most of the produced photographs are designated "Confidential," and, as such, Plaintiff is entitled to review and take notes concerning the photographs, but not possess them.

8.  These provisions fairly balance DOCCS' significant security concerns with Plaintiff's interest in using the photographs in connection with the contempt proceeding. I know of no legitimate reason why these photographs should be disseminated beyond those directly connected with this proceeding, particularly to other inmates, thereby enabling them to duplicate, broadcast on the internet, or otherwise distribute the photographs without any possible controls. The risk to the safety and security of DOCCS' employees and inmates would be substantial; in contrast, Plaintiff is not materially prejudiced by rational restrictions on access to, and use of the photographs.

9.  In sum, the designation of photographs of the interior of maximum-security correctional facilities as either "Highly Confidential" or "Confidential" should not be disturbed. These designations are essential to the protection of DOCCS staff and inmates, but still permit Plaintiff access to the photographs and the ability to use them at the contempt hearing and in court papers.

Dated: July _10_, 2018
Albany, NY

_____
CARL PIERCE, Colonel
DIRECTOR OF CERT OPERATIONS