```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9-12-19
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
ANTHONY MEDINA,                          :
                                         :    15-cv-1955(LAP)
                    Plaintiff,           :
                                         :    OPINION AND ORDER
v.                                       :
                                         :
LUCY BUTHER, et al.,                     :
                                         :
                    Defendants.          :
----------------------------------------X
LORETTA A. PRESKA, Senior United States District Judge:

     Before the Court is Plaintiff Anthony Medina's

("Plaintiff," "Medina" or "Mr. Medina") Notice of Motion for an

Order for Fees and Damages Related to Contempt (the "Fee

Motion"), dated Feb. 27, 2019 [dkt. no. 409], for entry of an

order for attorney's fees, costs, and damages awarded pursuant

to the Court's Opinion and Order (the "2019 Order"), dated Feb.

13, 2019 [dkt. no. 407], finding Defendant[1] in civil contempt for

---

[1] The Court notes that Plaintiff moved for civil contempt against
"Defendants," (see Motion for Contempt (the "Civil Contempt
Motion"), dated June 21, 2018 [dkt. no. 284], at 1), that is,
the Defendants listed in the First Amended Complaint, dated Nov.
6, 2015 [dkt. no. 36], the operative complaint at that time.
Despite the fact that both sides filed papers with respect to
"Defendants," (see, e.g., Civil Contempt Motion at 1;
Defendants' Memorandum of Law in Opposition to Plaintiff's
Motion for Contempt, dated Aug. 3, 2018 [dkt. no. 341], at 1),
the Parties litigated the contempt motion only with respect to
Defendant New York State Department of Corrections and Community
Supervision ("DOCCS").  Indeed, neither party argued that any
individual Defendant should or should not be held in contempt.
In the 2019 Order granting the Civil Contempt Motion, the Court
began with:
     Before the Court is Plaintiff Anthony Medina's
     ("Plaintiff," "Medina" or "Mr. Medina") (continued)

its willful noncompliance with the effective pain treatment

portion of the Court's Memorandum and Order (the "2017 Order"),

---

(continued) Motion for Contempt (the "Civil Contempt
Motion"), dated June 21, 2018 [dkt. no. 284], to hold
the New York State Department of Correction[s] and
Community Supervision ("DOCCS") in contempt for
violating the Court's Memorandum and Order, dated Feb.
3, 2017 [dkt. no. 159] (the "2017 Order").
(2019 Order at 3.)  Later, however, the Court wrote,
"[a]gain, DOCCS medical personnel willfully denied Mr.
Medina effective pain medication."  (Id. at 59; see also,
e.g., id. at 60.)  Moreover, in the 2019 Order's
Conclusion, the Court wrote that "Plaintiff Medina's Civil
Contempt Motion [dkt. no. 284] against DOCCS personnel for
failing to comply with the effective pain treatment portion
of the 2017 Order is granted."  (Id. at 91-92.)  The Court
now clarifies that "DOCCS medical personnel" and "DOCCS
personnel" means DOCCS and not any individual Defendant.
As was clear from the 2019 Order, the actions and inactions
that resulted in the finding of contempt were Department-
wide, and findings of contempt or sanctions against a
corrections department or corrections management
organization are not unknown.  See, e.g., Balla v. Idaho
State Bd. of Correction, 119 F. Supp. 3d 1271, 1284 (D.
Idaho 2015); Kelly v. Wengler, 979 F. Supp. 2d 1104, 1108
(D. Idaho 2013), aff'd, 822 F.3d 1085 (9th Cir. 2016).  The
Court notes that Plaintiff has recently filed a Second
Amended and Supplemental Complaint, naming new Defendants.
(Plaintiff's Second Amended and Supplemental Complaint
("SAC"), dated Aug. 21, 2019 [dkt. no. 447].)  Plaintiff
may, if he wishes, move for an order of civil contempt
against any individual Defendant, thereby "providing [him
or her] adequate notice, and thus an opportunity to present
a defense."  SerVaas Inc. v. Mills, 661 F. App'x 7, 10 (2d
Cir. 2016).  The Court may then "make such findings and
order such relief (including contempt sanctions) as it
deems appropriate based on the full record then before it"
against any individual Defendant.  Id.  As always, any and
all Defendants are "able to appeal any adverse decision."
Id.  Accordingly, except for the titles of some of the
parties' filings, any reference to "Defendants" on these
motions is made singular herein to refer only to Defendant
DOCCS.

dated Feb. 3, 2017 [dkt. no. 159].  Plaintiff's Fee Motion [dkt. no. 409] is granted to the extent stated below.

## I. BACKGROUND

This action began on March 12, 2015, when Plaintiff filed a complaint alleging, among other things, violations of his civil rights under 42 U.S.C. § 1983 ("Section 1983").  (See Complaint, dated Mar. 12, 2015 [dkt. no. 2], at 1.)  The Court assumes familiarity with the underlying facts relevant to resolving the instant motion, which are set forth in the 2017 Order and 2019 Order.

In short, on February 3, 2017, the Court issued the 2017 Order, granting "Plaintiff's request for a preliminary injunction [dkt. no. 43] pursuant to Fed. R. Civ. P. 65" and "order[ing] Defendant[ ], during the pendency of this action:"

> 1) to reinstate Plaintiff's prescription of Tramadol/Ultram, or an alternate, but equally effective, pain medication immediately;
>
> 2) to dim or turn off Plaintiff's overhead light in accordance with past accepted requests for the reasonable accommodation regardless of his housing facility and unit; and, when a housing unit and/or facility has both cells facing windows and cells not facing windows, to house Plaintiff in a cell which does not face a window or to tint the window; [and]
>
> 3) to provide Plaintiff with a closed circuit television ("CCTV") and/or documents in 32 font print before and during any disciplinary hearing and ensure that he can use them.

(2017 Order at 54.)

On June 21, 2018, Plaintiff moved for a finding of civil contempt against Defendant for Defendant's failure to abide by the 2017 Order. (See Civil Contempt Motion at 1.) Specifically, Plaintiff requested the following relief:

a) Monetary damages to Plaintiff for his unnecessary pain and suffering;

b) Coercive fines to compel future obedience with [the 2017 Order];

c) Plaintiff's health care to be transferred to an independent pain management specialist for the duration of the instant litigation; [and]

d) Plaintiff's reasonable attorney['s] fees and costs for the prosecution of this contempt motion and proceeding.

(Id. at 2.)

On February 13, 2019, the Court issued the 2019 Order, granting the portion of Plaintiff's Civil Contempt Motion concerning Defendant's "fail[ure] to comply with the effective pain treatment portion of the 2017 Order," denying "[t]he portions of the Civil Contempt Motion addressed to tinted windows," and noting that "the portion addressed to CCTV use was withdrawn" by Plaintiff. (2019 Order at 90, 92.)

The Court found that coercive sanctions were no longer appropriate because Plaintiff had already been released from custody. (Id. at 89.) However, "[i]n order to remedy the non-compliance," the Court found Plaintiff was entitled to an award of compensatory damages "for the pain and other discomfort he

4

suffered as a result of the non-compliance." (Id. at 92.) The Court also found that Plaintiff's counsel, Amy Jane Agnew, Esq., was entitled to "the fees and costs of prosecuting the Civil Contempt Motion." (Id.) The Court instructed "[c]ounsel [to] confer as to the amount of damages to be awarded for pain and suffering and the amount of attorney's fees and costs to be awarded and [to] inform the Court by letter no later than February 27, 2019 as to the status of such discussions." (Id.)

On February 27, 2019, Plaintiff moved for entry of an order for attorney's fees, costs, and damages awarded pursuant to the 2019 Order. (Fee Motion at 1.) Specifically, Plaintiff seeks $478,365 in attorney's fees,[2] $59,763.82 in costs, (Agnew Reply Decl. ¶ 50), and $150,000 "in compensatory damages for his pain,

---

[2] Ms. Agnew is a "solo practitioner through the Law Office of Amy Jane Agnew, P.C." (Declaration of Amy Jane Agnew in Support of Plaintiff's Motion for Fees, Costs and Damages Related to Contempt Proceedings ("Agnew Mem. Decl."), dated Feb. 27, 2019 [dkt. no. 413], ¶ 2.) Six law students (Mr. Brian McGrath, Ms. Kara Somerstein, Ms. Annabel Pollioni, Mr. Robert Price, Mr. Robert Beecher, and Ms. Sarah Matchett (collectively, the "Student Law Clerks") and one paralegal (Ms. Molly Curran) worked with Ms. Agnew on the Civil Contempt Motion and related proceedings. (Id. ¶¶ 14, 17; Reply Declaration of Amy Jane Agnew in Support of Plaintiff's Motion for Fees, Costs and Damages Related to Contempt Proceedings ("Agnew Reply Decl."), dated June 28, 2019 [dkt. no. 428], ¶¶ 40-46.) Ms. Agnew, the Student Law Clerks, and Ms. Curran are referred to herein as "Ms. Agnew's Team." Plaintiff submits that he is entitled to fees for Ms. Agnew's legal services (at an hourly rate of $500 for 736.91 total hours), the Student Law Clerks' services (at an hourly rate $125 for 589 total hours), and Ms. Curran's services (at an hourly rate of $125 for 204.93 total hours). (Plaintiff's Memorandum of Law in Support of an (continued)

suffering and garden variety emotional distress," (Pl. Mem. at 13).[3]

On June 14, 2019, Defendant's filed its opposition. (Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Attorney's Fees, Costs and Damages ("Def. Opp."), dated June 14, 2019 [dkt. no. 425].) On June 28, 2019, Plaintiff filed his reply. (Pl. Reply.) On July 2, 2019, Defendant requested leave to file a sur-reply. (Letter Motion for Leave to File Sur-Reply or to Strike Portions of Plaintiff's Reply in Support of Plaintiff's Motion for Attorney's Fees, Costs and Compensatory Damages ("Def. Sur-Reply Request"), dated July 2, 2019 [dkt. no. 431].) On July 3, 2019, the Court granted Defendant's request. (Order ("Sur-Reply Order"), dated

---

(continued) Award for Attorney Fees, Costs and Damages Related to the Order Finding Defendants in Contempt ("Pl. Mem."), dated Feb. 27, 2019 [dkt. No. 414], at 5, 11; Plaintiff's Reply Memorandum of Law in Support of Motion for Attorney's Fees, Costs and Compensatory Damages ("Pl. Reply"), dated June 28, 2019 [dkt. no. 429], at 14; Supplemental Declaration of Amy Jane Agnew in Support of Plaintiff's Motion for Fees, Costs and Damages Related to Contempt Proceedings ("Agnew Second Supp. Decl."), dated Aug. 22, 2019 [dkt. no. 448], ¶¶ 2, 4, 6.) Plaintiff further submits that he is entitled to attorney's fees for Ms. Agnew's travel time (at an hourly rate of $250 for 37.3 total hours), the Student Law Clerks' travel time (at an hourly rate of $62.50 for 19.5 total hours), and Ms. Curran's travel time (at an hourly rate of $62.50 for 2 total hours). (Pl. Mem. at 11; Agnew Second Supp. Decl. ¶¶ 3, 5, 7.) These hours total $478,365 in requested attorney's fees.
[3] The Court notes that Ms. Agnew adjusted some of the amounts sought by Plaintiff throughout her various declarations; these numbers reflect Plaintiff's final requested amounts.

July 3, 2019 [dkt. no. 433].)  On July 19, 2019, Defendant filed

its sur-reply.  (Defendants' Sur-Reply Memorandum of Law in

Opposition to Plaintiff's Motion for Attorney's Fees, Costs and

Damages ("Def. Sur-Reply"), dated July 19, 2019 [dkt. no. 437].)

This Order follows.

## II. **LEGAL STANDARD**

As the Court of Appeals held in Weitzman v. Stein, "the

sanctions for civil contempt serve two purposes: to coerce

future compliance and to remedy any harm past noncompliance

caused the other party."  98 F.3d 717, 719 (2d Cir. 1996)

(citing United States v. United Mine Workers of America, 330

U.S. 258, 302-04 (1947)).  Put simply, "[c]ivil contempt

sanctions must be remedial and compensatory rather

than punitive."  Broker Genius Inc. v. Seat Scouts LLC, No. 17-

Cv-8627(SHS), 2019 WL 2462333, at *2 (S.D.N.Y. June 13, 2019)

(internal quotation marks and citations omitted).

"When a contempt sanction is compensatory, some proof of

loss must be present and the sanction should correspond at least

in some degree with the amount of damages."  Mattina v. Saigon

Grill Gourmet Rest., Inc., No. 08 Civ. 3332(DC), 2009 WL 323507,

at *8 (S.D.N.Y. Feb. 4, 2009) (internal quotation marks and

citations omitted); see also Rick v. Buchansky, No. 82 Civ.

3906(RJW), 2001 WL 936293, at *5 (S.D.N.Y. Aug. 16, 2001) ("As

to the remedial nature of sanctions, 'once the plaintiff has

proved that he has suffered harm because of a violation of the
terms of an injunction, compensatory damages are appropriate.'"
(quoting Vuitton et Fils S.A. v. Carousel Handbags, 592 F.2d
126, 130 (2d Cir. 1979))).  "The Court has broad discretion to
design a remedy that will bring about compliance." Mattina,
2009 WL 323507, at *8.  "Because the object is to 'make
reparation to the injured party and restore the parties to the
position they would have held had the injunction been obeyed[,']
a district court 'is not free to exercise its discretion and
withhold an order in civil contempt awarding damages, to the
extent they are established.'" Cardell Fin. Corp. v.
Suchodolski Assocs., Inc., No. 09 Civ. 6148 (VM) (MHD), 2012 WL
12932049, at *61 (S.D.N.Y. July 17, 2012), report and
recommendation adopted, 896 F. Supp. 2d 320 (S.D.N.Y. 2012)
(quoting Vuitton et Fils S.A., 592 F.2d at 130).

     "Compensatory sanctions may include an award of attorneys'
fees and costs if the Court finds willful violation." Jolen,
Inc. v. Kundan Rice Mills, Ltd., No. 19-CV-1296(PKC), 2019 WL
2949988, at *3 (S.D.N.Y. July 9, 2019). But see Jacobs v.
Citibank, N.A., 318 F. App'x 3, 5 n.3 (2d Cir. 2008) (noting
that whether willfulness or bad faith is required to order
attorney fees as a sanction for violating a court order
"remain[s] an open one in our Circuit"). The Court of Appeals
has held that "while willfulness may not necessarily be a

prerequisite to an award of fees and costs, a finding of willfulness strongly supports granting them." Weitzman, 98 F.3d at 719.  Indeed, "'a district court, having found willful contempt, would need to articulate persuasive grounds for any denial of compensation' of such costs to 'the victim of contempt." Skyline Steel, LLC v. PilePro, LLC, No. 13-CV-8171(JMF), 2018 WL 6025863, at *2 (S.D.N.Y. Nov. 16, 2018) (quoting Weitzman, 98 F.3d at 719); see also N.Y. State Nat'l Org. for Women v. Terry, 952 F. Supp. 1033, 1043 (S.D.N.Y. 1997) ("It is well settled in this Circuit that costs, including reasonable attorney's fees, may be awarded to the party who prosecutes a contempt motion as an appropriate compensatory sanction for contumacious behavior.").

Here, in addition to finding Plaintiff entitled to compensatory damages, the Court also authorized an award of attorney's fees and costs in the 2019 Order.  (2019 Order at 92.)  The Court found Defendant's conduct "had been willful, thus justifying the award." Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp., 642 F. Supp. 2d 276, 298 (S.D.N.Y. 2009).  (See, e.g., 2019 Order at 53 (finding Defendant "willfully attempted to interfere with Mr. Medina's effective pain treatment").)

## III. **DISCUSSION**

### A. **Application of the PLRA**

Defendant argues that the Prison Reform Litigation Act ("PLRA") caps Plaintiff's application for attorney's fees.[4] (Def. Opp. at 3.)  Plaintiff, of course, disagrees.  (Pl. Mem. at 2-3; Pl. Reply at 1.)

"In construing [the PLRA], we begin, as we must, with the text."  Shepherd v. Goord, 662 F.3d 603, 606 (2d Cir. 2011) (citing Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 760 (2011)); see also BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183 (2004) ("[A court's statutory interpretation] inquiry begins with the statutory text, and ends there as well if the text is unambiguous.").  The relevant PLRA provision is 42 U.S.C. § 1997e(d)(3), which states that "[n]o award of attorney's fees in [a Section 1983 litigation] shall be based on an hourly rate greater than 150 percent of the hourly rate established . . . for payment of court-appointed counsel" under the Criminal Justice Act, 18 U.S.C. § 3006A.  (See Pl. Mem. at 2; Def. Opp. at 3.)

---

[4] Defendant principally relies on case law from the Ninth Circuit in making its argument.  (See Def. Opp. at 3-4 (citing Webb v. Ada Cty., 285 F.3d 829 (9th Cir. 2002)).  This Court is not bound by Ninth Circuit precedent.

The Court did not find Second Circuit case law directly on
point, and none has been suggested by counsel, that would
prevent it from allowing Ms. Agnew's Team to recoup their usual
fees associated with bringing the Civil Contempt Motion against
Defendant for Defendant's failure to comply with the 2017 Order.
Therefore, although it does not appear that the Court of Appeals
has yet to determine whether the PLRA caps attorney's fees
associated with pre-judgment civil contempt motions,[5] the
statutory text appears to be quite clear.

---

[5] Indeed, there appear to be conflicting holdings concerning the
applicability of the PLRA coming out of courts in this district.
Defendant relies on, but notably miscite, Burks v. Stickney, No.
9:16-CV-0759(FJS/DEP), 2018 WL 582583 (N.D.N.Y. Jan. 29, 2018)
and Gross v. Lunduski, 304 F.R.D. 136 (W.D.N.Y. 2014). (See
Def. Opp. at 3-4.)  In Burks, the court applied the PLRA fee cap
rate -- which, Defendant failed to mention, was specifically
"requested" by the plaintiff -- to attorney's fees on a motion
for discovery sanctions brought pursuant to Federal Rule of
Civil Procedure 37(d) and the court's inherent power to regulate
litigation.  2018 WL 582583, at *1, *5.  Likewise, in Gross, the
plaintiff requested attorney's fees "as permitted by [the] PLRA"
on a motion for discovery sanctions brought pursuant to Federal
Rule of Civil Procedure 37(a)(5)(A).  304 F.R.D. at 164.
However, the Court itself neither applied the PLRA nor decided
on the proper amount of attorney's fees, as Defendant
misleadingly suggests; instead, it merely instructed the parties
to brief plaintiff's request for such fees.  Id.  The Court also
notes that, in dicta, this Court's late colleague Judge Harold
Baer, Jr. once opined that 42 U.S.C. § 1997e(e), the PLRA
provision covering a prisoner's "compensatory damages based only
on mental or emotional injury, . . . may also extend to" motions
for civil contempt for a compensatory fine.  Benjamin v. Kerik,
No. 75 CIV. 3073(HB), 1999 WL 221113, at *5 n.4 (S.D.N.Y. Apr.
14, 1999).  However, other courts in this district have found
the PLRA inapplicable.  In Clarkson v. Coughlin, No. 91 Civ.
1792(RWS), 2006 WL 587345, at *3 (S.D.N.Y. Mar. 10, 2006), the
court acknowledged "[i]t is undisputed that (continued)

The PLRA only caps fees "directly and reasonably incurred in proving an actual violation of the plaintiff's rights . . . under [42 U.S.C. §] 1988. . . ." 42 U.S.C. § 1997e(d)(1)(A). The Court therefore agrees with Plaintiff that the attorney's fees for which he seeks reimbursement are not capped by the PLRA since no "actual violation of rights" has yet been adjudicated on the merits. (Pl. Mem. at 3.) In fact, Defendant has repeatedly argued that "Plaintiff has not prevailed or proven a violation of his rights." (Id.)

The legislative history of the PLRA supports this finding. "The PLRA, codified in 42 U.S.C. § 1997e, was adopted with 'the principal purpose of deterring frivolous prisoner lawsuits and appeals.'" Morris v. Eversley, 343 F. Supp. 2d 234, 239 (S.D.N.Y. 2004) (quoting Nicholas v. Tucker, 114 F.3d 17, 19 (2d Cir. 1997), cert. denied, 523 U.S. 1126 (1998)). That purpose

---

(continued) independent claims under 42 U.S.C. §[ ] 1983   . . . and other such statutes must be exhausted via the grievance procedure established under [Section 1997e(a) of the] PLRA." "However," the Clarkson court found that, where "the proposed order" at issue was "directed purely at motions for contempt or enforcement of [an earlier] Consent Decree," the PLRA was not triggered because "the PLRA does not apply to such motions." Id.; see also Torres v. Walker, 356 F.3d 238, 241, 243 (2d Cir. 2004) (finding "no reason to apply the PLRA fee cap" in action in which "judgment was never entered" where "it cannot be said that [plaintiff's] attorneys' fees were directly and reasonably incurred in proving an actual violation of his statutory rights" because parties' stipulation of dismissal "expressly disclaimed any liability on [defendants'] part for any violation of [plaintiff's] rights").

is no way germane to the instant case.  As is made abundantly
clear by the Court's 92-page 2019 Order, Plaintiff's Civil
Contempt Motion was neither frivolous nor sought to resolve the
merits of Plaintiff's underlying "civil rights claim."  Id.
("Section 1997e(d) imposes 'substantial restrictions' on
attorneys' fees that can be awarded to a prisoner-plaintiff who
succeeds on a civil rights claim. . . ." (quoting Blissett v.
Casey, 147 F.3d 218, 220 (2d Cir. 1998) (emphasis added)).

Put simply, the attorney's fees sought here are an award
"to a victim of contempt," Weitzman, 98 F.3d at 719, issued by
this Court as a result of Defendant's willful noncompliance with
the 2017 Order.  (See, e.g., 2019 Order at 53 (finding Defendant
"willfully attempted to interfere with Mr. Medina's effective
pain treatment").)  The fees are not an award to a prevailing
party in connection with a determination of the merits of a
Section 1983 case.  As such, just because Plaintiff brought a
Section 1983 claim does not mean that the provisions of 42
U.S.C. § 1997e(d) necessarily govern any and all attorney's fees
awards in this case.

Accordingly, the PLRA fee cap does not apply.

## B. Attorney's Fees

"The Court has wide discretion in determining whether to
award attorneys' fees and in determining the reasonableness of

any such award." Shepherd v. Law Offices of Cohen & Slamowitz, LLP, No. 08 CV 6199(CM)(LMS), 2010 WL 4922314, at *2 (S.D.N.Y. Nov. 29, 2010) (citing Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cty. of Albany, 522 F.3d 182, 190 (2d Cir. 2008)). The Court of Appeals has repeatedly "said that '[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" O.R. v. N.Y.C. Dep't of Educ., 340 F. Supp. 3d 357, 363 (S.D.N.Y. 2018) (quoting Arbor Hill, 522 F.3d at 186). "This calculation yields a 'presumptively reasonable fee,' which is also referred to as the 'lodestar.'" Id. (quoting Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011)). The "lodestar method" has "achieved dominance in the federal courts." Shepherd, 2010 WL 4922314, at *2 (quoting Gisbrecht v. Barnhart, 535 U.S. 789, 801 (2002)).

"In setting the reasonable hourly rate, 'a court must determine what a reasonable paying client would be willing to pay for the legal services, in other words, the appropriate market rate for counsel over the course of the number of hours appropriately worked.'" De La Paz v. Rubin & Rothman, LLC, No. 11 Civ. 9625(ER), 2013 WL 6184425, at *10 (S.D.N.Y. Nov. 25, 2013) (quoting Torres v. City of New York, No. 07 Civ. 3473(GEL), 2008 WL 419306, at *1 (S.D.N.Y. Feb. 14, 2008)).

"Courts are also to consider that a reasonable client wishes to 'spend the minimum necessary to litigate the case effectively.'" Shepherd, 2010 WL 4922314, at *2 (quoting Arbor Hill, 522 F.3d at 190).

A court's determination as to the reasonable hourly rate "contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicants counsel," which may "include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district.'" De La Paz, 2013 WL 6184425, at *10 (quoting Farbotko v. Clinton Cty., 433 F.3d 204, 209 (2d Cir. 2005)).  Courts must keep in mind that reasonable hourly rates "var[y] by both practice area and location." Echevarria v. Insight Med., P.C., 102 F. Supp. 3d 511, 516 (S.D.N.Y. 2015) (citing Arbor Hill, 522 F.3d at 184, 192).  In addition, the "[h]ourly rate should be current rather than historic." Dunn v. Advanced Credit Recovery Inc., No. 11 Civ. 4023(PAE)(JLC), 2012 WL 676350, at *5 (S.D.N.Y. Mar. 1, 2012), report and recommendation adopted, No. 11 Civ. 4023(PAE), 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012) (internal quotation marks and citation omitted).

In Arbor Hill, the Court of Appeals stated that in determining what rate a paying client would be willing to pay,

the district court should assess case-specific considerations, including the factors enumerated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989). See Arbor Hill, 522 F.3d at 186-90.  The twelve factors enumerated in Johnson are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at 186 n.3 (quoting Johnson, 488 F.2d at 717-19).

In addition to the Johnson factors, the Arbor Hill court ruled that the district court should also consider other factors, including:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-

existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

Id. at 184.

In Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542 (2010), "the Supreme Court acknowledged the lodestar approach over the Johnson factors approach," De La Paz, 2013 WL 6184425, at *11, reasoning that "the lodestar figure includes most, if not all, of the relevant factors constituting a reasonable attorney's fee," Perdue, 559 U.S. at 553 (internal quotation marks and citation omitted).  The Supreme Court advised that the Johnson factors could be applied in the "rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." Perdue, 559 U.S. at 554.

The Court of Appeals has recently reiterated that "Perdue . . . did not overrule Arbor Hill" and "the twelve Johnson factors remain important tools for helping district courts calculate the lodestar and, in exceptional cases, determining whether an enhancement or cut to the lodestar is warranted." Lilly v. City of New York, Nos. 17-2823(L)-cv, 17-3000(XAP)-cv, 2019 WL 3806446, at *6 (2d Cir. Aug. 14, 2019); see also, e.g., Jin v. Pacific Buffet House, Inc., No. 06-CV-579 (VVP), 2010 WL 2653334, at *2 n.2 (E.D.N.Y. June 25, 2010) (noting Perdue "cautions against using a strict Johnson approach as the primary

basis for determining reasonable attorneys' fees, but nowhere calls into question the idea of using relevant _Johnson_ factors in helping to come to a reasonable fee"). Moreover, in considering "the _Arbor Hill_ and _Johnson_ factors to the extent there is information in the record," the Court need "not make findings as to each factor." _O.R._, 340 F. Supp. 3d at 365. While the district court enjoys "considerable discretion . . . in setting a reasonable hourly rate," _id._ at 363–64 (quoting _Arbor Hill_, 522 F.3d at 190), at bottom, "the burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." _Id._ at 363 (quoting _Blum v. Stenson_, 465 U.S. 886, 895 n.11 (1984)).

"The other prong of the lodestar equation is the reasonable hours for which compensation should be awarded." _In re Arbitration Between Okyere & Houslanger & Assocs., PLLC_, No. 1:12-CV-01463(JPO)(GWG), 2015 WL 4366865, at *9 (S.D.N.Y. May 28, 2015). "The Court can exercise its discretion to award fees for hours that are not excessive, redundant, or otherwise unnecessary in light of the litigation." _C.B. v. N.Y.C. Dep't of Educ._, No. 18 Civ. 7337 (CM), 2019 WL 3162177, at *9 (S.D.N.Y. July 2, 2019) (internal quotation marks and citation omitted); _see also O.R._, 340 F. Supp. 3d at 367 ("A claimant is

only to be compensated for 'hours reasonably expended on the litigation.'" (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983))).

"A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed, and contemporaneous time records." Echevarria, 102 F. Supp. 3d at 516.  The records, however, need not specify "the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." U.S. Football League v. Nat'l Football League, 704 F. Supp. 474, 477 (S.D.N.Y. 1989), aff'd, 887 F.2d 408 (2d Cir. 1989).

"[T]he presiding Court, with its familiarity with the proceedings, is afforded considerable discretion and latitude in assessing," the following:

> [T]he hours expended by counsel and the value of the
> work product of the particular expenditures to the
> client's case. Efforts put into research, briefing and
> the preparation of a case can expand to fill the time
> available, and some judgment must be made in the
> awarding of fees as to diminishing returns from such
> further efforts.... In making this examination, the
> district court does not play the role of an uninformed
> arbiter but may look to its own familiarity with the
> case and its experience generally as well as to the
> evidentiary submissions and arguments of the parties.

In re Arbitration Between Okyere, 2015 WL 4366865, at *10 (quoting DiFilippo v. Morizio, 759 F.2d 231, 235-36 (2d Cir. 1985)); see also O.R., 340 F. Supp. 3d at 367 ("Because

attorney's fees are dependent on the unique facts of each case, the resolution of this issue is committed to the discretion of the district court." (quoting Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992))).

"The critical inquiry is whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." De La Paz, 2013 WL 6184425, at *13 (internal quotation marks and citations omitted).  However, "[t]he Supreme Court has cautioned that 'trial courts need not, and should not, become green-eyeshade accountants.'" O.R., 340 F. Supp. 3d at 367 (quoting Fox v. Vice, 563 U.S. 826, 838 (2011)).  "As a result, a district court is not required to 'set forth item-by-item findings concerning what may be countless objections to individual billing items.'" Id. (quoting Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994)).  Instead, "[t]he Court is free to review the hours in their totality and make educated adjustments across the board, and/or assess the reasonableness of time spent on particular aspects of the litigation." In re Arbitration Between Okyere, 2015 WL 4366865, at *10; see also De La Paz, 2013 WL 6184425, at *14 ("[T]he court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." (internal quotation marks and citations omitted)).

In essence, "[a] court need not 'become enmeshed in a meticulous analysis of every detailed facet of the professional representation' to determine the proper award," Tatum v. City of New York, No. 06-cv-4290(PGG)(GWG), 2010 WL 334975, at *3 (S.D.N.Y. Jan. 28, 2010) (quoting Seigal v. Merrick, 619 F.2d 160, 164 n.8 (2d Cir. 1980)), "nor should '[a] request for attorney's fees . . . result in a second major litigation,'" id. (quoting Hensley, 461 U.S. at 437).  While "[a] district court has broad discretion in setting fee awards," De La Paz, 2013 WL 6184425, at *3, "[t]he burden is ultimately on the applicant to demonstrate the reasonableness of the hours spent and the rates sought," Tatum, 2010 WL 334975, at *3.

Plaintiff submits that he is entitled to attorney's fees for Ms. Agnew's legal services (at an hourly rate of $500 for 736.91 total hours), the Student Law Clerks' services (at an hourly rate $125 for 589 total hours), and Ms. Curran's services (at an hourly rate of $125 for 204.93 total hours).  (Pl. Mem. at 5, 11; Pl. Reply at 14; Agnew Second Supp. Decl. ¶¶ 2, 4, 6.) Plaintiff further submits that he is entitled to attorney's fees for Ms. Agnew's travel time (at an hourly rate of $250 for 37.3 total hours), the Student Law Clerks' travel time (at an hourly rate of $62.50 for 19.5 total hours), and Ms. Curran's travel time (at an hourly rate of $62.50 for 2 total hours).  (Pl. Mem. at 11; Agnew Second Supp. Decl. ¶¶ 3, 5, 7.)  The Court will

first address the reasonableness of the rates requested and will then consider the reasonableness of the number of hours expended.

### 1. Reasonableness of the Requested Hourly Rates

Defendant argues that "[t]he hourly rate of $500 for Ms. Agnew and $125 for [the Student Law Clerks] and [Ms. Curran] sought here are excessive and unreasonable." (Def. Opp. at 6.) The Court agrees that the requested hourly rate of $500 for Ms. Agnew is unreasonable and reduces her hourly rate to $400. However, the Court finds that hourly rates of $125 for the Student Law Clerks and $125 for Ms. Curran are reasonable and will not be reduced.

#### i. Reasonableness of Ms. Agnew's Requested Hourly Rate

Defendant argues that the rate requested by Ms. Agnew is unreasonably high and that the appropriate rate is "in the range of $300-$325" per hour, which Defendant claims is "[t]he reasonable hourly rate for civil rights attorneys with six to seven years litigation experience in this District." (Def. Opp. at 9.)  The Court agrees that the requested rate of $500 is unreasonable in light of the rate Ms. Agnew "actually charge[s] [her] paying clients and the rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'"  Tatum, 2010 WL 334975, at *4

(quoting <u>Gierlinger v. Gleason</u>, 160 F.3d 858, 882 (2d Cir. 1998)).  The Court instead finds that a rate of $400 per hour for Ms. Agnew is reasonable.

As noted above, "[d]etermination of the reasonable hourly rate is a factual issue committed to the court's discretion, and is typically defined as the market rate a paying client would be willing to pay."  <u>Id.</u> at *4 (citing <u>Arbor Hill</u>, 522 F.3d at 183).  "In determining what rate is reasonable, courts should rely on both evidence submitted by the parties as to the rates they typically charge," <u>id.</u> (citing <u>Farbotko</u>, 433 F.3d at 209), "and 'its own knowledge of comparable rates charged by lawyers in the district,'" <u>id.</u> (quoting <u>Morris</u>, 343 F. Supp. 2d at 245). "The size of the firm may also be considered as a factor if it would affect the hourly rate, primarily due to varying overhead costs." <u>C.D. v. Minisink Valley Cent. Sch. Dist.</u>, No. 17 Civ. 7632 (PAE), 2018 WL 3769972, at *6 (S.D.N.Y. Aug. 9, 2018) (citation omitted).  Moreover, in numerous cases, "current rates, rather than historical rates, should be applied in order to compensate for the delay in payment."  <u>LeBlanc-Sternberg v. Fletcher</u>, 143 F.3d 748, 764 (2d Cir. 1998) (citing <u>Missouri v. Jenkins</u>, 491 U.S. 274, 283-84 (1989)).

Here, Ms. Agnew supports her hourly rate request with three declarations submitted by "[e]xperienced litigators who [write]

in support of Plaintiff's fee application," (Pl. Mem. at 8
(citing Declaration of George R. Hinckley, Esq. in Support of
Plaintiff's Motion for Fees Related to Contempt Decision
("Hinckley Mem. Decl."), dated Feb. 27, 2019 [dkt. no. 410];
Declaration of Beth Manes, Esq. in Support of Plaintiff's Fee
Application for Contempt Proceedings ("Manes Mem. Decl."), dated
Feb. 27, 2019 [dkt. no. 411]; Declaration of Geoffrey Potter,
Esq. in Support of Plaintiff's Attorney Fees Relates to Contempt
Findings ("Potter Mem. Decl."), dated Feb. 27, 2019 [dkt. no.
412]),[6] as well as "four recent retainer agreements for civil
rights matters" from a free speech case, an age discrimination
case, a disability rights case, and a Section 1983 case, (Pl.
Reply at 5).[7]

---

[6] (See also Pl. Mem. at 8 (arguing the three lawyer declarants
"do not find $500 per hour to be an unreasonable fee for Ms.
Agnew" and "also find the number of hours expended to be
reasonable" (citing Hinckley Mem. Decl. ¶¶ 7, 9-10; Manes Mem.
Decl. ¶¶ 13-16; Potter Mem. Decl. ¶¶ 5-7, 9-10)).)
[7] Defendant submits that the Court should disregard the "13
additional exhibits, including irrelevant retainer agreement[s]"
that Plaintiff submitted "[i]n his reply." (Def. Sur-Reply at
1.) The Court need not address this argument because it does
not ultimately rely on the retainer agreements in reaching its
conclusion as to Ms. Agnew's rate. However, as discussed more
fully in Section III.B.1.ii, infra, the Court finds Defendant
"had a full opportunity to evaluate" the documents Plaintiff
submitted on reply "and submit a sur-reply in response to
[them]." Bernardino v. Barnes & Noble Booksellers, Inc., No.
17-CV-04570(LAK)(KHP), 2017 WL 7309893, at *6 n.3 (S.D.N.Y. Nov.
20, 2017), report and recommendation adopted as modified, No.
17-cv-4570(LAK), 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018).
"Thus," Defendant is "not prejudiced by [Plaintiff's] submission
on reply" nor would it be prejudiced by "this (continued)

As a threshold matter, the Court gives little to no weight to the three declarations because Plaintiff fails to cite to any holding that "a colleague's opinion [is] a relevant consideration." (Def. Opp. at 7; see Pl. Mem. at 8; Pl. Reply at 5-6.) The little weight the Court does afford the declaration of Ms. Agnew's former colleague Ms. Manes -- in that she attests to the rate Ms. Agnew "actually receives," (Pl. Mem. at 9 (citing Manes Mem. Decl. ¶ 7)) -- does not lend much support to Plaintiff's argument because Ms. Mannes indicates Ms. Agnew has previously billed at $350-$400 per hour,[8] thereby undermining Plaintiff's assertion that she is entitled to $500 per hour.[9] (Manes Mem. Decl. ¶ 7.)

"A reasonable starting point for determining the hourly rate for purposes of a lodestar calculation is the attorney's customary rate." Echevarria, 102 F. Supp. 3d at 517 (quoting Parrish v. Sollecito, 280 F. Supp. 2d 145, 169-70 (S.D.N.Y.

---

(continued) Court's consideration of" the documents, including the retainer agreements. Id.

[8] Ms. Manes only attests to what Ms. Agnew previously billed in New Jersey; notably, she does not attest to what Ms. Agnew previously billed in New York. (See Manes Mem. Decl. ¶¶ 1, 6-7.)

[9] See also C.B., 2019 WL 3162177, at *5 (noting district courts "have decided not to rely too heavily affidavits, since they may only 'provide isolated examples of billing rates of a few lawyers,' may leave out context that rationalizes the rates billed, and may even list rates that are not in practice ever paid by reasonable, paying clients" (quoting C.D., 2018 WL 3769972, at *6 n.9)).

2003)).  "Plaintiff's counsel submits . . . that Ms. Agnew's standard rates are $ 400-$500 per hour."  (Pl. Reply at 5.) Aside from statements in Mr. Hinckley, Mr. Potter, and Ms. Manes' declarations, as well as Ms. Agnew's declaration, (see, e.g., Agnew Mem. Decl. ¶ 13), Ms. Agnew provides little documentation of her actual hourly rate.  In fact, only one of Ms. Agnew's four retainer agreements concerns a Section 1983 claim.  Ms. Agnew does not provide other supporting documentation of her hourly rate, such as "affidavits from former clients" in Section 1983 actions or actions involving civil contempt motions.  Echevarria, 102 F. Supp. 3d at 517. "Nevertheless, . . . in light of the case law discussed below" the Court finds an hourly rate of $400 is reasonable.  Tatum, 2010 WL 334975, at *4.

"Although the actual rate an attorney charges paying clients is persuasive evidence of reasonableness, compensable attorneys' fees must ultimately conform to market rates."[10]  Id. at *5.  Although, as determined above in Section III.A, supra,

---

[10] Courts are instructed to look to market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  O.R., 340 F. Supp. 3d at 363 (quoting Blum, 465 U.S. at 895 n.11).  The relevant community in this case is the Southern District of New York.  See Arbor Hill, 522 F.3d at 190 ("[T]he 'community' for purposes of this calculation is the district where the district court sits.");  In re Arbitration Between Okyere, 2015 WL 4366865, at *9 ("The relevant market is the forum in which the case is brought not the location of counsel.").

there has not yet been -- nor will there be in this Order -- a decision on the merits of Plaintiff's Section 1983 claim in this action, Plaintiff and Defendant agree that the relevant standard for present purposes is what attorneys of comparable experience in civil rights litigation charge as an hourly rate.  (See Pl. Mem. at 9; Def. Opp. at 7.)  See also Wise v. Kelly, 620 F. Supp. 2d 435, 446 (S.D.N.Y. 2008) (noting, in awarding attorney's fees on a contempt motion in a case brought, in part, under Section 1983, "[t]he legal community at issue here is one that covers . . . civil rights, or similar, cases").

While Defendant argues that Ms. Agnew's customary rate of $500 is above-market, (Def. Opp. at 9), "consistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, . . . with average awards increasing over time." Echevarria, 102 F. Supp. 3d at 518 (citation omitted). Nonetheless, the Court notes that Ms. Agnew "incorrectly argue[s] that large law firm rates should apply to civil rights litigation done by solo practitioners."  Tatum, 2010 WL 334975, at *5.  (See, e.g., Pl. Mem. at 8 (citing to case in which the court awarded $502 per hour for a sixth year associate in the New York City office of the large, international law firm Gibson, Dunn & Crutcher, LLP (citing Ceglia v. Zuckerberg, No. 10-CV-00569A(F), 2012 WL 503810, *5 (W.D.N.Y. Feb. 14, 2012))).)

"Reference to large Manhattan firm practice is simply not appropriate in this case," Tatum, 2010 WL 334975, at *5, as Ms. Agnew works alongside only one other attorney at a firm that focuses mainly on constitutional, disability, and civil rights and criminal defense work.  (Agnew Mem. Decl. at ¶ 2.)

However, as Plaintiff correctly notes, the Court of Appeals has previously held that "courts should not automatically reduce the reasonable hourly rate based solely on an attorney's status as a solo practitioner."  (Pl. Mem. at 10 (quoting Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC, 497 F.3d 133, 143 n.6 (2d Cir. 2007)).)  Therefore, even though Ms. Agnew is a solo practitioner, the Court finds she is "competent and seasoned" in civil rights matters, especially involving Plaintiff and his years-long litigation.  Tatum, 2010 WL 334975, at *5.  (See Agnew Mem. Decl. ¶¶ 2, 7-8.)  As such, in light of the Court's "broad discretion in setting fee awards," De La Paz, 2013 WL 6184425, at *3, as well as comparable cases suggesting $400 per hour is not in excess of the market rate in similar cases, the Court finds $400 per hour is a reasonable rate for Ms. Agnew. See Bernier v. Papagianopolous, No. 99 Civ.2000(MHD), 2006 WL 2819590, at *1-2 (S.D.N.Y. Oct. 2, 2006) (awarding $400 per hour in attorney's fees to lead lawyer in Section 1983 action); Raniola v. Bratton, No. 96 Civ. 4482(MHD), 2003 WL 1907865, at

*6 (S.D.N.Y. Apr. 21, 2003) (finding rate of $400 per hour reasonable for solo and small firm practitioners).

Defendant also argues that Plaintiff's request "is far in excess of what a reasonable client would have been willing to pay" because, "however contentious [the litigation] may have been . . . in counsel's own admission, [it] did not involve complex issues." (Def. Opp. at 6 (citing Pl. Mem. at 7).) The Court disagrees. $400 per hour is not excessive; instead, it is an "appropriate rate[ ] of compensation for attorneys" faced with cases of similar "factual and historical complexity." Benihana, Inc. v. Benihana of Tokyo, LLC, No. 15 Civ. 7428(PAE), 2017 WL 6551198, at *4 (S.D.N.Y. Dec. 22, 2017) (finding requested rates reasonable where there was "tangible evidence of the factual and historical complexity of the controversy," including defendant's "serial disobedience, chronicled . . . in multiple court and arbitral rulings").

Importantly, "[w]hile [Plaintiff's] claims were not legally complex, the case was nonetheless challenging and extremely hard-fought; a plaintiff's [recovery] was by no means inevitable." Tatum, 2010 WL 334975, at *5. Here, as noted in the 2019 Order, "Ms. Agnew was a tireless advocate for Mr. Medina," having dealt with, among many other things, handwritten Ambulatory Health Records that were difficult to obtain and

decipher.   (2019 Order at 91.)   The favorable result Ms. Agnew won for Plaintiff "is a tribute to the skills, talent, and perseverance" she "brought to the case," Tatum, 2010 WL 334975, at *5; as such, her "advocacy is to be commended and compensated," (2019 Order at 91).   See also Middleton v. Green Cycle Hous., Inc., No. 15MC0023, 2017 WL 715747, at *10 (S.D.N.Y. Feb. 23, 2017) ("[I]t is due to [attorneys'] persistence and diligence that [the party] has obtained a favorable result.").

Accordingly, the Court finds that Ms. Agnew's hourly rate shall be reduced to $400 per hour.

### ii. Reasonableness of the Student Law Clerks' Requested Hourly Rate

"Like paralegals, law student clerks are compensated at prevailing market rates. Students are generally billed at rates similar to those of paralegals." Moon v. Gab Kwon, 99 Civ. 11810(GEL), 2002 WL 31512816, at *3 (S.D.N.Y. Nov. 8, 2002) (citations omitted); see also Ng v. King Henry Realty, Inc., No. 16 Civ. 0013(PAE) (JCF), 2016 WL 6084074, at *5 S.D.N.Y. Oct. 7, 2016) ("Law student interns and paralegals are generally compensated at the same rate."). Here, "[t]he description of the work performed by" the Student Law Clerks "indicate[s] that they" performed similar work to paralegals. Poulos v. City of New York, No. 14-CV-03023(LTS)(BCM), 2018 WL 3750508, at *12

(S.D.N.Y. July 13, 2018), <u>report and recommendation adopted</u>, No.
14 CV 3023-LTS-BCM, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018).
(<u>See, e.g.</u>, Exhibit 2 to Agnew Mem. Decl. ("Agnew Mem. Decl. Ex.
2"), dated Feb. 27, 2019 [dkt. no. 413-2], at 22 ("RPrice Had a
brief conference call with AJ re: assignment; Spent 2h 52m going
through defendant's emails and created a log of any emails that
actually marched their reasons for confidentiality.").)[11]

As such, the Court finds that the Student Law Clerks
"should be compensated at $125 per hour, which is the prevailing
market rate in this District for paralegals in similar cases."[12]
<u>M.C. ex rel. E.C. v. Dep't of Educ. of City of New York</u>, No. 12
Civ. 9281(CM)(AJP), 2013 WL 2403485, at *7 (S.D.N.Y. June 4,
2013), <u>report and recommendation adopted</u>, No. 12 Civ.
9281(CM)(AJP), 2013 WL 3744066 (S.D.N.Y. June 28, 2013); <u>see
also</u> <u>Trs. of Hollow Metal Pension Fund v. Morris Fine Furniture
Work Shop, Inc.</u>, No. 1:16-CV-09480(LAK)(KHP), 2019 WL 2526914,
at *9 (S.D.N.Y. Mar. 15, 2019), <u>report and recommendation
adopted</u>, No. 16-CV-9480(LAK)(KHP), 2019 WL 2525413 (S.D.N.Y.
June 19, 2019) (noting paralegal fee of $125 per hour is the
"Southern District rate" (citation omitted)); <u>Ng</u>, 2016 WL

---

[11] (<u>See also</u> Exhibit 2 to Agnew Second Supp. Decl., dated Aug.
22, 2019 [dkt. no. 448-3], at 6 (same).)
[12] As noted in Section III.B.1.i, <u>supra</u>, the appropriate district
for purposes of determining the reasonable rate is the Southern
District of New York.

6084074, at *5 (finding fee of $125 per hour for law student intern reasonable upon noting "[t]he hourly rates awarded to law student interns and paralegals in civil rights cases in this district tend to range from $100 to $125 per hour").

In opposing Plaintiff's Fee Motion, Defendant argued at first that "Plaintiff provide[d] no information concerning the experience of these student interns and thus fees should not be awarded for them." (Def. Opp. at 10.)  In its sur-reply, Defendant then argued Plaintiff's "untimely" "biographies of the legal interns,"[13] which Plaintiff "belatedly" submitted in reply, "should be rejected." (Def. Sur-Reply at 3.)  The Court recognizes, as Defendant asserts, that courts in this district have previously "declin[ed] to award fees for students where no information about their experience was provided." (Def. Opp. at 10 (citing Alvarez v. Well-S Indus., Inc., No. 12-CV-8835(VSB), 2015 WL 4934404, at *8 (S.D.N.Y. Aug. 18, 2015)); see also Def. Sur-Reply at 3 (citing Custodio v. Am. Chain Link & Const., Inc., No. 08 Civ. 7148(GBD)(HBP), 2014 WL 116147, at *2 (S.D.N.Y. Jan. 13, 2014) (same regarding paralegals)).)

---

[13] Defendant cites to Agnew Reply Decl. ¶¶ 40-46 when making this argument.  (Def. Sur-Reply at 3.)  However, only paragraphs 40-45 relate to the Student Law Clerks.  These paragraphs are referred to herein as the "Student Law Clerks' Biographies." Paragraph 46 relates to Ms. Curran.  This paragraph is referred to herein as "Ms. Curran's Biography," and is discussed in Section III.B.1.iii, infra.

However, it is squarely within the Court's "discretion to consider the reply exhibits discussed herein." WTA Tour, Inc. v. Super Slam Ltd., 339 F. Supp. 3d 390, 407 (S.D.N.Y. 2018). Upon being presented with the Student Law Clerks' Biographies, Defendant submitted a request to file a sur-reply, arguing that, after "initially submit[ting] scant evidence," Plaintiff submitted new exhibits, including "credentials for" the Student Law Clerks, for the first time on reply. (Def. Sur-Reply Request at 1, 1 n.1.)  The Court granted Defendant's request. (Sur-Reply Order at 2.)  Defendant did then submit a sur-reply. (Def. Sur-Reply.)

"To the extent" Defendant "assert[s] that the Court may not consider" the Student Law Clerks' Biographies because they are "new evidence offered on reply, [its] argument fails." Bernardino, 2017 WL 7309893, at *6 n.3.  Defendant "had a full opportunity to evaluate that evidence and submit a sur-reply in response to it."  Id.  "Thus," it is "not prejudiced by [Plaintiff's] submission on reply or this Court's consideration of it."  Id.; see also WTA Tour, 339 F. Supp. 3d at 407 ("[S]ince Respondents filed a sur-reply to Petitioners' reply, and since they do not claim surprise or request additional time to rebut the new exhibits, Respondents have not been prejudiced."); Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc., 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010) (finding

defendant "suffered no prejudice," in part, "because it has submitted a surreply").

Accordingly, the Court finds that $125 is a reasonable hourly rate for the Law Student Clerks.

### iii. Reasonableness of Ms. Curran's Requested Hourly Rate

Defendant argues that Plaintiff's proposed rate of $125 per hour for Ms. Curran is "[u]nsupported and [e]xcessive" because Ms. Curran is an "administrative assistant" impermissibly billing "at a paralegal rate." (Def. Opp. at 10, 14.)  However, Defendant refers to Ms. Curran as a paralegal at least three times in its submissions, thereby conceding its very own point. (See id. at 10 ("[T]he rate for student interns and paralegals should be billed at no more than $85 an hour."); Def. Sur-Reply at 1 (noting Plaintiff offered "13 additional exhibits, including . . . the biographies of law students/paralegals."); id. at 3-4 ("Ms. Agnew paid three of [the] legal interns at the rate of $35.00 per hour; three others at the rate of $50 per hour; and a paralegal at the rate of $35 per hour." (citing Student Law Clerks' Biographies; Ms. Curran's Biography[14]))._)

---

[14] Like the Student Law Clerks' Biographies, Defendant argues the Court should disregard Ms. Curran's Biography, which was also submitted by Plaintiff on reply.  (Def. Sur-Reply at 1.)  For the same reasons the Court finds it may consider (continued)

The Court finds that an overwhelming majority of Ms.
Curran's work, such as "creating the drug administration chart
exhibits" and "drafting documents," (Pl. Reply at 14), is
clearly that of a paralegal.  See, e.g., G.B. ex rel. N.B. v.
Tuxedo Union Free Sch. Dist., 894 F. Supp. 2d 415, 439 (S.D.N.Y.
2012) ("[P]aralegal tasks such as the preparation of trial
exhibits are compensable." (citation omitted)).

However, the Court agrees with Defendant that some of Ms.
Curran's time entries "plainly reflect work of a secretarial
nature," O.R., 340 F. Supp. 3d at 368, such as, "calls arranging
appointment times," (Def. Opp. at 14).  "The Supreme Court held
almost three decades ago that 'purely clerical or secretarial
tasks should not be billed at a paralegal rate, regardless of
who performs them.'" O.R., 340 F. Supp. 3d at 368 (quoting
Missouri, 491 U.S. at 288 n.10).  "Since that time, case law
holds that such secretarial tasks are considered part of a
firm's overhead and are not to be included as part of an award
for costs and fees."  Id.; see also Siegel v. Bloomberg L.P.,
13cv1351 (DF), 2016 WL 1211849, at *7 (S.D.N.Y. Mar. 22, 2016)
("With respect to tasks that are 'purely clerical,' such as
downloading, scanning, or copying documents and organizing

---

(continued) the Student Law Clerks' Biographies, see Section
III.B.1.ii, supra, the Court may also consider Ms. Curran's
Biography.

files, such work is generally not compensable, whether performed by an attorney or a paralegal.")

Ms. Agnew conceded that "there are a few entries for Ms. Curran's time that were erroneously included and comprise strictly overhead charges," and, as a result, she "deducted th[o]se costs." (Pl. Reply at 14 (citing Agnew Reply Decl. ¶ 47).) The Court is satisfied that Ms. Agnew's concessions account for any clerical or secretarial work impermissibly billed at a paralegal rate.

Accordingly, in relying on its "first-hand knowledge of [the] litigation and its extensive contact with the parties," Benihana, 2017 WL 6551198, at *3 (quoting Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997)), and exercising the "broad discretion" it is afforded in determining a fee award, De La Paz, 2013 WL 6184425, at *3, the Court finds "$125 per hour, which is the prevailing market rate in this District for paralegals,"[15] is a reasonable hourly rate for Ms. Curran. M.C., 2013 WL 2403485, at *7.

---

[15] As noted in Section III.B.1.i, supra, the appropriate district for purposes of determining the reasonable rate is the Southern District of New York.

## 2. Reasonableness of the Number of Hours Expended

"After determining appropriate hourly rates, courts must calculate the reasonable number of hours billed in order to determine the presumptively reasonable fee." Tatum, 2010 WL 334975, at *6 (citing Arbor Hill, 522 F.3d at 189-90).  Here, Defendant contends that the total number of hours billed by Ms. Agnew's Team is unreasonable.  (Def. Opp. at 10.)  Defendant requests that the Court either make "a 50% across-the-board reduction in Ms. Agnew's time" or reduce Ms. Agnew's total hours according to Defendant's "objections to Ms. Agnew's bills." (Id. at 11.)  Defendant further requests that "Plaintiff receive no award for work performed by Ms. Agnew's law students" or that the Court reduce the Student Law Clerk's time "by a minimum of 75%."  (Id.)  Finally, Defendant argues that Ms. Curran's time should not "even [be] included" in the fee award.  (Id. at 14.)

Defendant specifically challenges several categories of time entries, including: (i) billing for litigation unrelated to the Civil Contempt Motion; (ii) billing for work related to Plaintiff's withdrawn CCTV claim and unsuccessful window tinting claim; (iii) vague and block-billed entries; (iv) excessive hours; and (v) clerical and paralegal tasks billed at improper rates.  Each category is discussed in turn.

### i. Unrelated Litigation

The Court first considers Defendant's argument that the following two sets of Ms. Agnew's fees should be excluded from compensation because they are unrelated to the Civil Contempt Motion: "fees relating to settlement discussions and settlement stipulations and pleadings (filing of amended pleadings and answers)" (herein, the "Stipulation and Settlement Fees"); and "fees allegedly incurred in litigating a prior request for fees generated in obtaining the preliminary injunction and moving for a permanent injunction" (herein, the "Injunction Fees"). (Def. Opp. at 11.)

Defendant identifies specific time entries as part of these two sets of fees. (See Exhibit D to Declaration of Bruce J. Turkle in Opposition to Plaintiff's Motion for Attorney's Fees, Costs and Damages ("Turkle Opp. Decl. Ex. D"), dated June 14, 2019 [dkt. no. 424-4]; Exhibit E to Turkle Opp. Decl. ("Turkle Opp. Decl. Ex. E"), dated June 14, 2019 [dkt. no. 424-5].)[16]

---

[16] All of the entries identified in Exhibit D pertain to these two sets of fees, as the exhibit is entitled "Entries Unrelated to the Contempt Motion." (Turkle Opp. Decl. Ex. D at 1.) Conversely, only some of the entries identified in Exhibit E pertain to these two sets of fees, as the exhibit is entitled "Entries Combining Compensable and Non-Compensable Tasks." (Turkle Opp. Decl. Ex. E at 1.) The Court construes Defendant's use of "Combining" in Exhibit E to mean block-billing. As held in Section III.B.2.iii, infra, the Court declines to reduce Plaintiff's requested attorney's fees to account for any alleged block-billing.

Although this litigation began in 2015, and is now well into 2019, these contested time entries run from 2017 through 2018. (See id.)  Therefore, Plaintiff clearly is not seeking a "case-wide fee award," which courts in this district have correctly concluded is inappropriate in civil contempt cases.  Fendi Adele S.R.L., 642 F. Supp. 2d at 298–300 (answering "question [of] whether the fee award should cover all litigation activity or only the contempt proceeding" by finding award was "properly limited to those expenses triggered by [plaintiff's] contempt claim and its summary-judgment motion for a contempt citation," after defendant challenged specific time entries "as unrelated to the contempt proceeding").

Further, it cannot be said that Plaintiff is asking that Ms. Agnew be compensated for "aspect[s] of the litigation" that are "simply . . . adjunct to the contempt proceeding" because all of the challenged time entries fall between the date the 2017 Order was issued (February 3, 2017) and the date the Civil Contempt Motion was filed (June 21, 2018) and necessarily "involved at least some work" related to Plaintiff's contempt allegations.  Id. at 299, 301.  (See Turkle Opp. Decl. Ex. D at 1–8; Turkle Opp. Decl. Ex. E at 1–2; Pl. Reply at 12 (explaining the Stipulation and Settlement Fees reflect Ms. Agnew's "attempt to negotiate 1) a global settlement which would have ended the case entirely; and 2) a stipulation that might have resolved

Plaintiff's contempt motions").)  "That finding in itself
suffices to justify awarding [P]laintiff reasonable fees for
that effort."  Tucker v. City of New York, 704 F. Supp. 2d 347,
358 (S.D.N.Y. 2010) (finding plaintiff's attorneys' work on
plaintiff's state-law claims "sufficiently related to the
success" of plaintiff's federal claims to justify compensation
where "the work done . . . to preserve [the] state-law claims
[w]as reasonably calculated to improve the prospects for his
federal claims, at least by way of a future settlement").

In Fendi Adele S.R.L., the Court found "the extreme and
extended nature of [defendant's] violations, [defendant's]
persistence in violations after a reminder of the consent
injunction, and its subsequent resistance to full disclosure and
enforcement during the course of the lawsuit fully justif[ied]
an award of fees for all aspects of the contempt proceeding."
642 F. Supp. 2d at 300.  The same is true here.  Both the
Stipulation and Settlement Fees and Injunction Fees reveal that,
in the face of Defendant's willful noncompliance, Ms. Agnew
"tireless[ly] advocate[d] for Mr. Medina."  (2019 Order at 91.)
"Accordingly, [P]laintiff is entitled to reasonable compensation
for fees generated by" those endeavors.  Tucker, 704 F. Supp. 2d
at 358.

Nonetheless, it cannot be said that Ms. Agnew's activities
that generated the Stipulation and Settlement Fees and the
Injunction Fees were "necessary solely for the purpose," Wise,
620 F. Supp. 2d at 459, of "prosecuting the Civil Contempt
Motion," (2019 Order at 92 (emphasis added)).  As such, the
Court will "use a percentage reduction as a practical means of
trimming [some] fat" here.  Lewis v. Roosevelt Island Operating
Corp., No. 16-CV-03071(ALC)(SN), 2018 WL 4666070, at *7
(S.D.N.Y. Sept. 28, 2018) (internal quotation marks and
citations omitted); see also id. at *6 ("In this analysis, 'the
district court does not play the role of an uninformed arbiter
but may look to its own familiarity with the case and its
experience generally as well as to the evidentiary submissions
and arguments of the parties.'" (quoting DiFilippo, 759 F.2d at
236)).

The Court acknowledges that Plaintiff agreed "to reduce his
request for legal services fees for Amy Jane Agnew, Esq. in
[certain] entries," including several of the specific time
entries challenged by Defendant.  (Supplemental Declaration of
Amy Jane Agnew in Support of Plaintiff's Motion for Fees, Costs
and Damages Related to Contempt Proceedings ("Agnew First Supp.
Decl."), dated July 11, 2019 [dkt. no. 436], ¶ 3.)  Accordingly,
as the remaining challenged entries represent a mere fraction of
the hundreds of total time entries by Ms. Agnew, (see Exhibit 1

to Agnew Reply Decl. ("Agnew Reply Decl. Ex. 1"), dated June 28,
2019 [dkt. no. 428-1]; Exhibit 1 to Agnew Second Supp. Decl.,
dated Aug. 22, 2019 [dkt. no. 448-1]), the Court finds a 5%
reduction is appropriate in Ms. Agnew's hours.

### ii. Withdrawn and Unsuccessful Claims

Defendant next argues that Plaintiff is not entitled to
recover fees relating to claims upon which he did not prevail.[17]
(Def. Opp. at 12.)  As outlined by Defendant, "Plaintiff sought
contempt relating to three issues: (1) his medical treatment;
(2) his alleged inability to access his CCTV at a disciplinary
hearing; and (3) the tinting of windows near Plaintiff's cells."
(Id.)  Plaintiff withdrew his CCTV claim, and the Court denied
his window tinting claim.  (2019 Order at 92.)  Defendant argues
that, because Plaintiff "only succeeded on his claim concerning
medical treatment," he is not entitled to recover fees relating
to his CCTV and window tinting claims.  (Def. Opp. at 12.)  The
Court disagrees.

---

[17] In its sur-reply, Defendant argues that, "[i]n his reply,
Plaintiff improperly supplements the record by offering 13
additional exhibits [and] [t]he belated inclusion of those
documents does not demonstrate Plaintiff's entitlement . . . to
recover fees for . . . failed claims."  (Def. Sur-Reply at 1.)
As the Court has already held, see, e.g., Section III.B.1.ii,
supra, "[t]o the extent" Defendant "assert[s] that the Court may
not consider" these documents because they are "new evidence
offered on reply, [Defendant's] argument fails." Bernardino,
2017 WL 7309893, at *6 n.3.

According to the Supreme Court,

> "[T]wo questions must be addressed" in determining whether the results obtained by a plaintiff should lead to a reduction in a fee award: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"

Tatum, 2010 WL 334975, at *9 (quoting Hensley, 461 U.S. at 434).

In resolving the first question, "the Court must determine 'whether the claims on which plaintiff[ ] failed are sufficiently related to the prosecution of claims on which he succeeded, such that the time spent on the failed claims should be compensated.'"  Id. at *10 (quoting Robinson v. City of New York, No. 05 Civ. 9545(GEL), 2009 WL 3109846, at *8 (S.D.N.Y. Sept. 29, 2009)).  When considering the reasonableness of the number of hours expended, courts should subtract any "hours dedicated to severable unsuccessful claims." Pineda v. Frisoling, Inc., No. 15-CV-3774(GBD)(BCM), 2018 WL 4658798, at *4 (S.D.N.Y. Jan. 15, 2018), report and recommendation adopted sub nom. Pineda v. Frisolino, Inc., No. 15 Civ. 3774(GBD)(BCM), 2018 WL 3628898 (S.D.N.Y. July 30, 2018) (quoting Quartino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999)).

"Deciding whether the successful and unsuccessful claim are unrelated, however, is not an exact science." G.B., 894 F. Supp. 2d at 425 (internal quotation marks and citation omitted).

Instead, the question of attorney's fees "with respect to unsuccessful claims, is an issue left to the discretion of the district court." McDow v. Rosado, 657 F. Supp. 2d 463, 469 (S.D.N.Y. 2009) (quoting Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1183 (2d Cir. 1996)).  The test is whether "the successful and unsuccessful claims are inextricably intertwined and involve a common core of facts or [are] based on related legal theories." Id. (quoting Reed, 95 F.3d at 1183).  If they are, "it is not an abuse of discretion for the court to award the entire fee." Id. (quoting Reed, 95 F.3d at 1183); see also G.B., 894 F. Supp. 2d at 425 (finding, where "claims are considered related . . . the fee award need not be reduced, even if the plaintiff was unsuccessful on some of the claims" (citations omitted)).

As to the second question, "[t]he Supreme Court has consistently stressed the importance of the degree of the plaintiff's success in the litigation as a factor affecting the size of the fee to be awarded." Kassim v. City of Schenectady, 415 F.3d 246, 253 (2d Cir. 2005).  In Hensley, the Supreme Court explained that the presumptively reasonable fee must be assessed in conjunction with whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." Hensley, 461 U.S. at 434; see also Barfield v. N.Y. City Health and Hosps. Corp., 537 F.3d

132, 152 (2d Cir. 2008) ("Both the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success achieved." (internal quotation marks and citation omitted)).

Here, the Court finds that Plaintiff's CCTV, window tinting, and medical treatment claims are "inextricably intertwined." McDow, 657 F. Supp. 2d at 469 (quoting Reed, 95 F.3d at 1183). All three claims "involve a common core of facts," id. (quoting Reed, 95 F.3d at 1183), because they all "arise from" Plaintiff's incarceration in DOCCS correctional facilities. Cabrera v. Schafer, No. CV 12-6323(ADS)(AKT), 2017 WL 9512409, at *9 (E.D.N.Y. Feb. 17, 2017), report and recommendation adopted, No. 12-CV-6323(ADS)(AKT), 2017 WL 1162183 (E.D.N.Y. Mar. 27, 2017) (finding unsuccessful and successful claims intertwined where "all of Plaintiff's claims ar[o]se from his employment at Defendant's business"); see also Union Cent. Life Ins. Co. v. Berger, No. 10 Civ. 8408(PGG), 2013 WL 6571079, at *8 (S.D.N.Y. Dec. 13, 2013) (finding reduction of award unwarranted where "[a]ll of the claims . . . relate[d] to the interplay between the Policy and the Settlement Agreement" at the center of the parties' dispute). "[T]he critical fact" here "is that this entire action would have been unnecessary had" Defendant adequately provided for Plaintiff's needs while

he was housed in DOCCS correctional facilities.  Union Cent.
Life Ins., 2013 WL 6571079, at *8 (rejecting decedent's argument
that award should not include fees related to counterclaims
estate filed against life insurance company because "the
expenses the [e]state incurred vis à vis its claims against" the
company "were made necessary by" decedent's breach of the
settlement agreement at issue).

The Court will also not deduct from the award those fees
incurred in connection to the CCTV and window tinting claims
because "the work done in relation to those claims contributed
to the ultimate success of the lawsuit."  Morgenstern v. Cty. of
Nassau, No. CV 04-58(ARL), 2009 WL 5103158, at *10 (E.D.N.Y.
Dec. 15, 2009); see Grant v. Martinez, 973 F.2d 96, 99 (2d Cir.
1992) (noting the relevant query is "not whether hindsight
vindicates an attorney's time expenditures, but whether, at the
time the work was performed, a reasonable attorney would have
engaged in similar time expenditures").  The Supreme Court has
made clear that when a plaintiff has obtained "excellent results
. . . the fee award should not be reduced simply because the
plaintiff failed to prevail on every contention raised in the
lawsuit," G.B., 894 F. Supp. 2d at 425 (quoting Hensley, 461
U.S. at 435), or the plaintiff's case was "less than completely
successful," Tatum, 2010 WL 334975, at *12 (citing Hensley, 461
U.S. at 431).

Here, even though only one of Plaintiff's claims was successful, the Court's finding of civil contempt against Defendant in the 2019 Order "was a good outcome" for Plaintiff. Tatum, 2010 WL 334975, at *12; see also Cabrera, 2017 WL 9512409, at *9 ("[T]he Court declines to impose a blanket reduction to the lodestar based upon Plaintiff's ultimate lack of success on all but one of his wage and hour claims."). Accordingly, the fee award will not be reduced on this basis.

### iii. Vague and Block-Billed Time Entries[18]

Next, Defendant contends that "Plaintiff's fee request should be further reduced to the extent it is supported by block billing and vague entries." (Def. Opp. at 13.)[19]  Courts in this

---

[18] "Block billing is the practice of 'lumping' together time spent on different tasks rather than itemizing each discrete task as a separate line item." Tatum, 2010 WL 334975, at *6 n.8.

[19] Plaintiff asserts that Defendant also "challenged as 'vague,' time entries memorializing counsel calls between Plaintiff and Amy Jane Agnew, Esq or counsel's drafting [o]f privileged correspondence." (Pl. Reply at 8.)  To the extent Defendant does so, the Court agrees with Plaintiff that Ms. Agnew was permitted to "remove[ ] the detailed descriptions of the calls [between Plaintiff and Ms. Agnew] to preserve the attorney-client privilege in this on-going litigation." (Id. (citing Agnew Reply Decl. ¶ 4; DiBella v. Hopkins, 403 F.3d 102, 120 (2d Cir. 2005) (applying New York law to find that attorney invoices are privileged if they provide "detailed accounts of the legal services rendered")).)  See also Gary Friedrich Enters., LLC v. Marvel Enters., Inc., No. 08 Civ. 1533(BSJ)(JCF), 2011 WL 2623458, at *3 (S.D.N.Y. June 21, 2011) ("[T]o the extent that time records do contain privileged information, they may be redacted."); 105 St. Assocs., LLC v. Greenwich Ins. Co., No. 05 Civ. 9938(VM)(DF), 2006 WL 3230292, at *6 (S.D.N.Y. Nov. 7, 2006) ("[B]illing statements which are detailed in showing services, conversations, and conferences between (continued)

district have long held that a court "may deny compensation
where the billing information submitted is 'too vague to
sufficiently document the hours claimed.'" Tatum, 2010 WL
334975, at *7 (quoting Kirsch v. Fleet St., Ltd., 148 F.3d 149,
172 (2d Cir. 1998)).  This is because "[e]ntries or records
lacking sufficient detail 'cannot be evaluated for
reasonableness,' and therefore do not meet the standard for a
fee award." Id. (quoting Ursa Minor Ltd. v. Aon Fin. Prods.,
Inc., No. 00 CIV 2474(AGS), 2001 WL 1842042, at *6 (S.D.N.Y. May
30, 2001); see also Trs. of the Bricklayers v. Helmer-Cronin
Constr., Inc., No. 03 Civ. 748(MDF), 2005 WL 3789085, at *5
(S.D.N.Y. Oct. 24, 2005) (reducing total number of hours billed
where entries contained vague statements such as, "Study and
Review file," "Telephone call with client," "Letter to Silkey,"
and "Research").

However, a defendant's "complaint about lack of specificity
in [an attorney's] work summaries does not, in itself, justify
. . . a substantial reduction in compensable time." Raniola,
2003 WL 1907865, at *4.  In fact, despite being "fairly
general," time entries using "terms such as 'case preparation'
or 'meeting'" have been found to be "sufficiently concrete, when

_____

(continued) counsel and others are protected by the attorney-
client privilege." (internal quotation marks and citations
omitted)).

viewed in context, to permit the court to make a judgement [sic] about the reasonableness of the total hours claimed." Id.; see also Sang Lan v. Time Warner, Inc., No. 11 Civ. 2870(AT)(JCF), 2015 WL 2078385, at *3 (S.D.N.Y. May 4, 2015) ("[W]here an attorney's time entries are vague, courts may attempt to decipher them by reference to the context in which these entries occur [to determine] what work was involved." (internal quotation marks and citations omitted)).

Indeed, "[w]hile 'block-billing' is disfavored and may lack the specificity required for a fee award, it is not prohibited as long as the Court can determine the reasonableness of the work performed." Tatum, 2010 WL 334975, at *7 (citation omitted); see also Benihana, 2017 WL 6551198, at *3 ("[B]lock billing, although disfavored, does not automatically preclude recovery for the hours billed by counsel."). As such, "[i]t is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd., No. 10 Civ. 1853(PGG), 2011 WL 1002439, at *8 (S.D.N.Y. Mar. 16, 2011), aff'd, 483 F. App'x 634 (2d Cir. 2012) (internal quotation marks and citations omitted). "Instead, the Court must look at the big picture presented by the fee application." Id. (internal quotation marks and citations omitted); see also Raniola, 2003 WL 1907865, at *4

("The court is not required to assess each entry in isolation; rather, it may use its knowledge of the case and the demands that the issues posed by the case placed on the attorneys to judge whether counsel were wasting significant amounts of time or otherwise performing with less than reasonable efficiency."). Ultimately, "[b]ecause the reasonable number of hours spent on each case is fact and context specific, the inquiry is 'committed to the discretion of the court.'" Tatum, 2010 WL 334975, at *7 (quoting Clarke, 960 F.2d at 1153).

Upon "look[ing] at the big picture" here, Amaprop Ltd., 2011 WL 1002439, at *8 (internal quotation marks and citations omitted), the Court finds Plaintiff has "provide[d] supplemental detail that, when coupled with the context in which the allegedly 'vague' or 'block-billed' time entries were made, is sufficient to support the number of hours billed."[20] Tatum, 2010 WL 334975, at *8. (See Pl. Reply at 6-8; Agnew Reply Decl. ¶¶ 6-24.) Using "its knowledge of the case and the demands that

---

[20] In its sur-reply, Defendant argues that "[i]n his reply, Plaintiff improperly supplements the record by offering 13 additional exhibits [and] [t]he belated inclusion of those documents does not demonstrate Plaintiff's entitlement . . . to recover fees for [block-billed and] vague entries."  (Def. Sur-Reply at 1.)  As the Court has already held, see, e.g., Section III.B.1.ii, supra, "[t]o the extent" Defendant "assert[s] that the Court may not consider" these documents because they are "new evidence offered on reply, [Defendant's] argument fails." Bernardino, 2017 WL 7309893, at *6 n.3.

the issues posed by the case placed on" Ms. Agnew's Team,[21] the
Court finds that, "when view[ing]" the disputed time entries "in
context," Ms. Agnew's Team certainly did not "wast[e]
significant amounts of time or otherwise perform[ ] with less
than reasonable efficiency." Raniola, 2003 WL 1907865, at *4.
Quite the opposite; it was due to Ms. Agnew's Team's dedication
to Plaintiff's case, as well as their tireless and diligent
work, that Plaintiff received the favorable outcome that he
did.[22]

Accordingly, the Court will not reduce the fee award
because of allegedly vague or block-billed entries.[23]

---

[21] For instance, in the 2019 Order, the Court found:
> As a result of the hundreds of docket entries since
> Plaintiff's counsel's initial letter raising the issue
> of contempt and the mountains of evidence submitted on
> the Civil Contempt Motion, the Court is very familiar
> with the quality and quantity of work performed by Ms.
> Agnew. Obtaining documents was difficult, and the
> numerous types of documents, e.g., medication records,
> Ambulatory Health Records, Grievance files,
> transcripts, etc., only exacerbated the situation.
> Ambulatory Health Records were generally in
> handwriting, so deciphering them was particularly
> difficult. Counsel also undertook tedious but very
> helpful work in preparing the Meds Spreadsheet.

(2019 Order at 91.)  See footnote 26 in Section III.B.2.iv,
infra, for a citation to the "Meds Spreadsheet."

[22] (See, e.g., 2019 Order at 91 ("Ms. Agnew was a tireless
advocate for Mr. Medina.  She communicated frequently with DOCCS
medical personnel and DOCCS counsel in service of her client.
Such advocacy is to be commended and compensated.").)

[23] Defendant also challenges certain travel time billed as being
vague or block-billed.  (See Exhibit B to Turkle Opp. Decl.,
dated June 14, 2019 [dkt. no. 424-2], at 4) (continued)

### iv. Excessive Hours

Defendant also argues that Plaintiff seeks compensation for work that was "excessive and duplicative."[24] (Def. Opp. at 1, 12-13.) In "focus[ing] on the reasonableness of the total hours claimed," the Court finds that the amount of time billed by Ms.

---

(continued) (challenging Ms. Agnew's "[t]ravel to and from Sullivan Correctional Facility to visit with Client").) As a threshold matter, Ms. Agnew is entitled to bill "travel time . . . to visit [her] client." Hines v. 1025 Fifth Ave. Inc., No. 14-cv-3661(SAS), 2015 WL 4006126, at *7 n.64 (S.D.N.Y. June 30, 2015). Furthermore, the Court finds Plaintiff accurately proposed that attorney's fees be billed at half the hourly rate for travel time. (Pl. Mem. at 11.) See Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 373 (S.D.N.Y. 2005) ("Courts in this Circuit regularly reduce attorney's fees by 50% for travel time."). Therefore, Ms. Agnew's travel time is subject to a rate of $200 per hour, which is half her reasonable rate. See Section III.B.1.i, supra. The Student Law Clerk's travel time is subject to a rate of $62.50 per hour, which is half their reasonable rate. See Section III.B.1.ii, supra. Ms. Curran's travel time is subject to a rate of $62.50 per hour, which is half her reasonable rate. See Section III.B.1.iii, supra. The Court finds Ms. Agnew's total requested travel time of 37.3 hours, the Student Law Clerk's total requested travel time of 19.5 hours, and Ms. Curran's total requested travel time of 2 hours to be reasonable. (Agnew Second Supp. Decl. ¶¶ 3, 5, 7.)
[24] In so arguing, Defendant also contends that Ms. Agnew's time entry for "24.2 hours in a single day" was "temporally impossible." (Def. Opp. at 13.) The Court credits Plaintiff's argument that it is "very obvious that [this] entry" is "for law clerk, Robert Price, that was mis-categorized on Clio," (Pl. Reply at 13), and notes that, upon realizing the mistake, Ms. Agnew promptly corrected it, (see Agnew Reply Decl. ¶ 4; Agnew First Supp. Decl. ¶ 3). See Bernardino, 2017 WL 7309893, at *6 ("While it is regrettable that [defendant] initially submitted what turned out to be inaccurate information about what it thought the website looked like on February 3, 2017, its counsel was obliged to, and did, correct the record when the mistake was learned."). No further reduction in connection to this entry is warranted.

Agnew's Team "is not unreasonable in light of the 'big
picture.'" Tatum, 2010 WL 334975, at *8 (quoting Burr by Burr
v. Sobol, 748 F. Supp. 97, 100 (S.D.N.Y. 1990)).  Again, relying
on "its knowledge of the case and the demands that the issues
posed by the case placed on" Ms. Agnew's Team,[25] Raniola, 2003 WL
1907865, at *4, the Court finds that time spent, for example,
preparing the "900[-]page master timeline," (Agnew Reply Decl.
¶ 32), and "creating [the] medical administration chart excel
doc,"[26] (Def. Opp. at 13), among other challenged entries, is
"not unreasonable."  Tatum, 2010 WL 334975, at *8.

    Defendant relies, in part, on M.C., 2013 WL 2403485, in
arguing that the Student Law Clerk's hours, in particular, are
excessive.  (See Def. Opp. at 13 n.10.)  In M.C., the court
noted,

> While [the] use of student labor in some respects
> reduces the cost of litigation, substituting lower-
> priced law students for more expensive junior
> associates and paralegals, clinical legal education by
> its nature combines the practice of law with
> instruction, and thus may increase the number of hours
> spent on a case, not only because less experienced

---

[25] See footnote 21 in Section III.B.2.iii, supra (quoting 2019
Order at 91).
[26] The Court found Exhibit 206 to Reply Declaration of Amy Jane
Agnew in Support of Motion for Contempt ("Meds Spreadsheet"),
dated Aug. 14, 2018 [dkt. no. 356-45] to be one of the most
valuable documents submitted by the parties.  (See 2019 Order at
91 ("Counsel also undertook tedious but very helpful work in
preparing the Meds Spreadsheet.").)  The Court relied on and
cited to the Meds Spreadsheet heavily throughout the 2019 Order.
(See, e.g., id. at 33.)

    student attorneys must spend more time accomplishing a
    task than more experienced personnel, but also because
    the best clinical instruction deliberately invests
    more time in supervision and instruction than a law
    office can provide.

M.C., 2013 WL 2403485, at *11-12 (quoting Moon, 2002 WL 31512816

at *3). The M.C. court continued, "[i]t is the fee applicant's

duty to exercise good faith billing judgment to 'adjust for

[any] inefficiency [in using law students]' prior to making a

request for attorneys' fees." Id. at *12 (quoting Moon, 2002 WL

31512816 at *4); see also, e.g., Hensley, 461 U.S. at 434

("Counsel for the prevailing party should make a good faith

effort to exclude from a fee request hours that are excessive,

redundant, or otherwise unnecessary."). However, "[w]here the

fee applicant's own billing adjustments are adequately

documented and sufficiently substantial 'to account for the

unavoidable inefficiency, and overlap between instruction and

litigation, inherent in clinical law practice,' the Court need

not make additional substantial reductions." M.C., 2013 WL

2403485, at *12 (quoting Moon, 2002 WL 31512816 at *4).

     First and foremost, the Court notes that this litigation

was not conducted in association with a law school legal clinic,

and Defendant does not argue that it was. (See Agnew Mem. Decl.

at ¶ 15 ("All law student clerks who worked on this case during

                              54

the contempt period were paid by my firm[27] on an hourly basis and did not receive law school credit, though they all had the permission of their respective clinical professors or law school deans if they filed a notice of appearance in the matter.").)[28] Nevertheless, because Ms. Agnew attests that, at times, she "invested" time "in working with the students," (Agnew Reply Decl. ¶ 20), and "oversaw their work as [she] conducted [her] own," (id. ¶ 24), the Court has evaluated whether her "own billing adjustments are adequately documented and sufficiently substantial 'to account for the unavoidable inefficiency'" of

---

[27] Ms. Agnew attests that after graduating from Rutgers School of Law in 2011, she "managed lawsuits" for the law school's Constitutional Rights Clinic as a Graduate Fellow and "decided to represent Mr. Medina (with the support of the law school) because [she] felt that his claims were meritorious and because the case offered potentially great learning experiences for law students in the Constitutional Rights Clinic." (Agnew Mem. Decl. ¶¶ 6-8.) In addition, Ms. Agnew attests that "Ms. Pollioni also worked on the case in its early phases as a student in the Rutgers Constitutional Rights Clinic for which work she received law school credit and was not paid." (Agnew Reply. Decl. ¶ 42 n.1.) The Court "has no reason to doubt" Ms. Agnew's "attest[ations]," M.C., 2013 WL 2403485, at *12 (quoting Moon, 2002 WL 31512816 at *4), that the Student Law Clerks' time entries submitted as part of Plaintiff's Fee Motion exclude these "early phases" and were not connected to any clinic. (Agnew Reply. Decl. ¶ 42 n.1.)

[28] (See also, e.g., Agnew Reply Decl. ¶ 38 ("My firm compensates all law student clerks who are not receiving law school credit."); Def. Opp. at 10 ("Plaintiff seeks to recover for services of student interns."); id. at 11 ("It was, of course, incumbent upon Plaintiff's counsel to ensure her students were following proper billing practices."); Def. Sur-Reply at 4 ("[A] reasonable client would [not] have been willing to pay [Ms. Agnew's] firm $125 per hour for the services of law students with their particular background and experience.").)

using law students such that "the Court need not make additional substantial reductions." M.C., 2013 WL 2403485, at *12 (quoting Moon, 2002 WL 31512816 at *4).

"Having carefully examined the hours" billed by the Student Law Clerks, the Court finds Plaintiff's "application has already commendably addressed these issues." Id. (quoting Moon, 2002 WL 31512816 at *4). Ms. Agnew attests that it is her "practice to reduce law clerk hours at the end of the month when [she] review[s] [her] firm's billing" and that she "omitted many hours and recently edited some law clerk hours to an hourly rate of 'zero' because [she] found the hours to be unnecessary in reviewing for this fee application." (Agnew Mem. Decl. ¶ 16.) The Court has reviewed Plaintiff's fee request and finds this to be entirely true. (See Agnew Mem. Decl. Ex. 2 at 3 (reducing 1.70 hours Mr. McGrath spent researching to 0.00 and noting "AJA Note: no charge - could not be used; research woefully off base"). Therefore, "there is no doubt that" Ms. Agnew was "proactive in exercising billing judgment prior to making the demand for attorneys' fees." M.C., 2013 WL 2403485, at *12.

Accordingly, a reduction is not warranted to account for any allegedly excessive time entries.

### v. Clerical and Paralegal Tasks Billed at Improper Rates

Defendant also contends that Ms. Agnew inappropriately billed clerical and paralegal tasks at an attorney rate.[29]  (Def. Opp. at 13.)  "[C]ourts have the discretion to reduce the award for time spent by attorneys engaging in less skilled work, like filing and other administrative tasks."  O.R., 340 F. Supp. 3d at 368 (internal quotation marks and citation omitted).  Administrative tasks recognized by courts in this district include "faxing and mailing documents, making copies, filing, scanning, preparing documents for electronic filing, electronic file management, binding documents, and Bates stamping."  E.S. v. Katonah-Lewisboro Sch. Dist., 796 F. Supp. 2d 421, 431 (S.D.N.Y. 2011).

Here, Defendant objects to several categories of tasks performed by Ms. Agnew, including Ms. Agnew's: "arrang[ing] . . . counsel calls through Defendant['s] counsel," (Pl. Reply at 9; see also Def. Opp. at 14 ("arranging calls with Plaintiff")); "reviewing documents[,] starting the construction of the Master Timeline of exhibits[, and] review[ing] and

---

[29] Defendant also argues that Ms. Curran impermissibly billed for "[c]lerical or secretarial tasks [that] are part of a firm's overhead."  (Def. Opp. at 14.)  As previously noted in Section III.B.1.iii, supra, Ms. Agnew also "deducted 13.4 hours from clerical billing to account for the overhead entries of Molly Curran."  (Agnew Reply Decl. ¶ 47.)  No additional reductions for Ms. Curran's time related to this issue are warranted.

incorporat[ing] . . . potential exhibits" included in
Defendant's "belated production," (Pl. Reply at 10, 12; see also
Def. Opp. at 14 ("entries for trial exhibits and binders")); and
delivering trial clothes to the Metropolitan Correctional Center
("MCC") and books to the Court, (Pl. Reply at 11; Def. Opp. at
14).

The Court again turns to "its knowledge of the case and the
demands that the issues posed by the case placed on" Ms. Agnew,[30]
Raniola, 2003 WL 1907865, at *4, and acknowledges that the
additional time it took Ms. Agnew to complete certain tasks were
attributable to Defendant.  (See, e.g., Pl. Reply at 10
("Defendant['s] counsel insisted on a bizarre arrangement
through which all counsel calls between Plaintiff's counsel and
Mr. Medina would be arranged by and through Defendant['s]
counsel in lieu of an Order to Produce.").)  See also E.S., 796
F. Supp. 2d at 431 ("Where . . . the billing records are
voluminous, it is less important that judges attain exactitude,
than that they use their experience with the case, as well as
their experience with the practice of law, to assess the
reasonableness of the hours spent." (internal quotation marks
and citation omitted)).

---

[30] See footnote 21 in Section III.B.2.iii, supra (quoting 2019
Order at 91).

Upon such review, the Court further finds that the tasks at issue are not akin to the various administrative tasks identified above.   Instead, they are either "clearly legal in nature," King Fook Jewelry Grp. Ltd. v. Jacob & Co. Watches, Inc., No. 14 Civ. 742(ER)(JLC), 2019 WL 2535928, at *8 (S.D.N.Y. June 20, 2019) (holding "preparation for a . . . trial entails organization of documents that requires not only a substantial understanding of the case but also some legal expertise"),[31] or "are [not] capable of being performed by non-attorney staff," E.S., 796 F. Supp. 2d at 432.   (See Pl. Reply at 11 ("MCC only accepts trial clothes from counsel due to security and other concerns." (emphasis in original)); Exhibit 18 to Agnew Reply Decl., dated June 28, 2019 [dkt. no. 428-18], at 1 ("IT IS ORDERED that the METROPOLITAN CORRECTIONAL CENTER accept two (2) sets of trial clothes from Amy Jane Agnew, Esq. and deliver them to inmate Anthony Medina NYS DOCCS #99A2999.").)

Moreover, where a "service [was] capable of being performed by non-attorney staff," E.S., 796 F. Supp. 2d at 432, Ms. Agnew made a tremendous effort to give that task to the Student Law

---

[31] Likewise, Ms. Agnew's "draft[ing] subpoenas for medical witnesses from DOCCS," another entry Defendant challenges as being "of a paralegal or secretarial nature," and other similar such entries, (Exhibit F to Turkle Opp. Decl. ("Turkle Opp. Decl. Ex. F"), dated June 14, 2019 [dkt. no. 424-6], at 1; Agnew Reply Decl. ¶ 16; Agnew Reply Decl. Ex. 1 at 21), are also "clearly legal in nature." King Fook, 2019 WL 2535928, at *8.

Clerks, rather than perform it herself, thereby substantially lowering the total fees accrued because the Student Law Clerks billed at a considerably lower rate than Ms. Agnew. (Pl. Reply at 11 ("Plaintiff's counsel dispensed a very reasonable 27.45 hours getting the Master Timeline started so that law student clerks could continue the work with a relevant and understandable guide.  Further, in no firm in the country would such tedious and important document review be handled by law clerks.").)

Defendant is correct that delivering books to the Court -- which accounted for 1.2 hours of Ms. Agnew's total time -- was one such task that Ms. Agnew could have assigned to non-attorney staff.  (See Def. Opp. at 14; Turkle Opp. Decl. Ex. F at 4.) Notably, the Court of Appeals recently held that "hand-delivering courtesy copies of filings to the courthouse" constitutes a "clerical task" that must not be billed at an attorney rate.  Lilly, 2019 WL 3806446, at *8.  However, Plaintiff's agreeing "to reduce his request for legal services fees for" these 1.2 hours renders Defendant's objection to that time entry moot.  (Agnew First Supp. Decl. ¶ 3.)

Accordingly, the Court finds no reduction is warranted on this basis.

### 3. Total Fee Award

For the reasons stated above, Ms. Agnew's requested hourly rate of $500 is unreasonable and is reduced to $400. The requested hourly rate of $125 for the Student Law Clerks is reasonable and will not be reduced. The requested hourly rate of $125 for Ms. Curran is reasonable and will not be reduced.

Ms. Agnew's total requested legal services hours of 736.91 will be reduced by 5% (to account for Ms. Agnew's work on "unrelated litigation"), resulting in a total of 700.06 hours. The Student Law Clerks total requested services hours of 589 are reasonable will not be reduced. Ms. Curran's total requested services hours of 204.93 are reasonable will not be reduced.

The resulting fee for Ms. Agnew's legal services is $280,024. The resulting fee for the Student Law Clerks' services is $73,625. The resulting fee for Ms. Curran's services is $25,616.25.

Ms. Agnew's total requested travel time hours of 37.3 are reasonable and will not be reduced. The Student Law Clerks' total requested travel time hours of 19.5 are reasonable and will not be reduced. Ms. Curran's total requested travel time hours of 2 are reasonable and will not be reduced.

The resulting fee for Ms. Agnew's travel time is $7,460. The resulting fee for the Student Law Clerks' travel time is

$1,218.75.  The resulting fee for Ms. Curran's travel time is
$125.

Accordingly, Defendant is ordered to pay Ms. Agnew a total
of $388,069 in attorney's fees.

### C. Costs

The Court awarded "Plaintiff's counsel the reasonable costs
of prosecuting the contempt."  (2019 Order at 90-91.)   The Court
of Appeals has stated that "[t]he district court . . . may award
appropriate attorney fees and costs to a victim of contempt."
Weitzman, 98 F.3d at 719.  "Moreover, a finding of wilfulness
[sic] is not an indispensable prerequisite to such an award
although it is a relevant consideration."  Chevron Corp. v.
Donziger, 11-cv-0691(LAK), 2019 WL 2230244, at *30 (S.D.N.Y. May
23, 2019) (finding plaintiff "entitled to recover its reasonable
attorneys [sic] fees, disbursements, and expert witness fees
with respect to the discovery and litigation of those civil
contempts [sic] that the Court has found to have been willful").
Here, the Court found Defendant willfully failed to comply with
the 2017 Order.  (See, e.g., 2019 Order at 53 (finding Defendant
"willfully attempted to interfere with Mr. Medina's effective
pain treatment").)

Plaintiff requests costs in the amount of $59,763.82.[32]
(See Agnew Reply Decl. ¶ 50.)  In response, Defendant argues
that certain of Plaintiff's requested costs are not recoverable,
including, "overhead costs and supplies such as binders,
dividers and tabs" and "costs related to the tinting issue, for
which the Court denied Plaintiff's motion for contempt."  (Def.
Opp. at 14.)  The Court agrees with Defendant as to the former,
but disagrees with Defendant as to the latter.

"Courts in this Circuit generally decline to award costs
for binders and other exhibit-related supplies," including
dividers and tabs, "as they are part of general office overhead
and thus already compensated for through attorneys' fees."
Tatum, 2010 WL 334975, at *13; see also Vernon v. Port
Auth., 220 F. Supp. 2d 223, 232 (S.D.N.Y. 2002) (noting exhibit

---

[32] Plaintiff initially sought an award of $60,097.85 in costs.
(Agnew Mem. Decl. ¶ 19; Agnew Reply Decl. ¶ 50.)  Plaintiff
appears to have erroneously stated that the total costs were
$60,406.38 in Plaintiff's memorandum of law in support of the
Fee Motion.  (Pl. Mem. at 1.)  The Court assumes that Plaintiff
meant to seek the $60,097.85 figure he included -- and repeated
-- in the declaration filed with that memorandum and the reply
declaration, which came later.  (See Agnew Mem. Decl. ¶ 19;
Agnew Reply Decl. ¶ 50.)  Defendant objected to "[t]he $334.03
of costs incurred prior to the February 3, 2017 PI Order."
(Def. Opp. at 14.)  Plaintiff agreed, (Pl. Reply at 14), and
reduced the $60,097.85 "sum by $334.03 for pre-injunction
expenses yielding a total of $59,763.82."  (Agnew Reply Decl. ¶
50.)

tabs fall within the category of supplies that are not compensable).

However, the Court finds costs related to Plaintiff's window tinting claim are compensable. "The Court determined above," see Section III.B.2.ii, supra, that Plaintiff's window tinting claim is "inextricably intertwined" with Plaintiff's successful medical treatment claim "and did not merit any reduction in the attorney['s] fee award." Tatum, 2010 WL 334975, at *14. "The same logic applies to reimbursable costs."[33]   Id.

Plaintiff also seeks reimbursement for other types of costs, including $43,900 in expert witness fees for Plaintiff's expert, Dr. Adam Carinci.  (Pl. Mem. at 12; Agnew Mem. Decl. ¶ 20.)  These fees, which make up "the bulk" of Plaintiff's requested costs, are "altogether reasonable," Kuper v. Empire Blue Cross & Blue Shield, No. 99 Civ. 1190JSGMHD, 2003 WL 23350111, at *14 (S.D.N.Y. Dec. 18, 2003), report and recommendation adopted, No. 99-CV-1190, 2004 WL 97685 (S.D.N.Y. Jan. 20, 2004), given Dr. Carinci's "thorough[ ] familiar[ity] with Mr. Medina's lengthy medical history" and his "detailed, careful testimony," which the Court found "to be very

---

[33] To the extent that Defendant also challenges costs related to Plaintiff's withdrawn CCTV claim, (see Def. Opp. at 12), the same logic also applies to those costs.

persuasive," (2019 Order at 16-17).  See also Chevron Corp.,
2019 WL 2230244, at *30 (finding plaintiff entitled to recover
expert witness fees).

Accordingly, Plaintiff's requested costs will only be
reduced to account for the costs of binders and tabs.  Plaintiff
submits that the total cost for binders and tabs is $1,288.69.
(Declaration of Eileen Schultz in Reply Regarding Costs of
Binders and Tabs, dated June 28, 2019 [dkt. no. 427], ¶ 16.)
Defendant asks the Court to reduce costs by $1,840.95 to account
for "entries and receipts for purchasing of supplies or
purchasing supplies in combination with printing."  (Def. Opp.
at 14-15.)  The Court of Appeals "has consistently 'held that
attorney's fees awards include those reasonable out-of-pocket
expenses incurred by attorneys and ordinarily charged to their
clients.'"  TufAmerica Inc. v. Diamond, No. 12-CV-3529(AJN),
2016 WL 1029553, at *7 (S.D.N.Y. Mar. 9, 2016) (quoting U.S.
Football League v. Nat'l Football League, 887 F.2d 408, 416 (2d
Cir. 1989)).  "Such costs may properly include . . . printing."
H.B. Auto. Grp., Inc. v. Kia Motors Am., Inc., No.
13CV4441(VEC)(DF), 2018 WL 4017698, at *3 (S.D.N.Y. July 25,
2018), report and recommendation adopted sub nom. H.B. Auto.
Grp., Inc. v. Kia Motors Am., No. 13-CV-4441(VEC)(DF), 2018 WL
4007636 (S.D.N.Y. Aug. 22, 2018) (citing TufAmerica Inc., 2016
WL 1029553, at *7); see also Morgenstern, 2009 WL 5103158, at

*11 ("[E]xpenditures for . . . printing . . . are routinely recoverable."). Plaintiff's requested costs for printing are reasonable and will be awarded in this case.

As such, Plaintiff's total requested costs of $59,763.82 will be reduced by $1,288.69 to account for the costs of binders and tabs, resulting in a total award of costs in the amount of $58,475.13. Accordingly, Defendant is ordered to pay Ms. Agnew a total of $58,475.13 in costs.

### D. Compensatory Damages

Lastly, Defendant challenges Plaintiff's request for $150,000 in compensatory damages for his "pain, suffering and garden variety emotional distress." (Pl. Mem. at 13.) "Compensatory sanctions are meant to make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed." Broker Genius, 2019 WL 2462333, at *2 (internal quotation marks and citations omitted). "Accordingly, the amount of compensatory sanctions awarded must be 'calibrat[ed] . . . to the actual injuries inflicted on the victims of the contumacious conduct.'" Id. (citation omitted). "To prove these damages, the moving party must demonstrate a causal connection between the contemnor's contemptuous behavior and the alleged damages." Id. (quoting

Grand v. Schwarz, No. 15-cv-8779(KMW), 2018 WL 4026735, at *2
(S.D.N.Y. Aug. 23, 2018)).

According to Plaintiff, "[t]he record establishes that [he]
was denied adequate pain medication for approximately 482 days
due to Defendant['s] contempt." (Pl. Mem. at 13.)  In response,
Defendant makes every effort to minimize Plaintiff's experience.
Defendant makes a frankly preposterous argument:  Plaintiff is
not entitled to these damages because he "did not suffer actual
pain on each of the 482 days reflected in the spreadsheet."
(Def. Opp. at 15.)

Unsurprisingly, the Court rejects this argument.  As
detailed at great length in the 2019 Order, there can be no
doubt that a "causal connection between the contemnor's
contemptuous behavior and the alleged damages" exists here.
Broker Genius, 2019 WL 2462333, at *2 (quoting Grand, 2018 WL
4026735, at *2).  The record unequivocally establishes that
Plaintiff endured pain and suffering for an extended period of
time as a result of Defendant's willful noncompliance.  (See,
e.g., 2019 Order at 71 (quoting from Dr. Dinello's testimony,
whereby Dr. Dinello affirmed that "Mr. Medina told [Dr. Dinello]
he suffers from extreme eye pain that progresses into a very bad
headache, and he gets vertigo, dizziness, and he sometimes
vomits" (quoting Transcript of September 18, 2018 Hearing on the

Civil Contempt Motion, dated Oct. 3, 2018 [dkt. no. 392], at
220:12-19)).)  Moreover, Plaintiff's "anxiety," (2019 Order at
31 (citations omitted), which was brought on by Defendant's
unpredictable and inconsistent discontinuance, weaning Plaintiff
off, and commencement of a number of drugs, (see, e.g., 2019
Order at 32-33, 38 n.17), also describe the emotional distress
Plaintiff endured.  Cf. Weitzman v. Stein, 891 F. Supp. 927, 932
(S.D.N.Y. 1995), rev'd on other grounds, 98 F.3d 717 (2d Cir.
1996) (rejecting plaintiff's claim for emotional distress
damages for the mere "frustration and delay . . . caused by
[defense counsel's] conduct").

By the time the 2019 Order was issued on February 13,
2019, Plaintiff had endured several years of mental anguish in
additional to physical pain and suffering.  (See, e.g., 2019
Order at 29 n.13 ("Dr. Belgard vindictively discontinued Mr.
Medina's Gabapentin in 2016 pursuant to her own, unwritten rule,
testifying to her own deliberate indifference: 'It doesn't
matter if [inmates] are suffering from pain . . . Whether they
have pain or not, it's irrelevant. There are other medications
that can be used. So it doesn't matter if you're in pain. It's
[Gabapentin] discontinued.'" (quoting Transcript of June 15,
2016 Hearing on the Preliminary Injunction Motion, dated June
28, 2016 [dkt. no. 128], at 48:22-49:5)).)

Accordingly, Defendant is ordered to pay Plaintiff a total of $150,000 in compensatory damages.

## IV. CONCLUSION

To the extent and for the reasons stated above, Plaintiff's Fee Motion [dkt. no. 409] is granted in the amount of $388,069 in attorney's fees, $58,475.13 in costs, and $150,000 in compensatory damages.  Accordingly, Defendant is ordered to pay Ms. Agnew $388,069 in attorney's fees and $58,475.13 in costs. Defendant is further ordered to pay Plaintiff $150,000 in compensatory damages.

SO ORDERED.

Dated:      New York, New York
            September 12, 2019

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge